[No. D008794. Fourth Dist., Div. One. Oct. 12, 1989.]

HORACE MANN INSURANCE COMPANY, Plaintiff and Respondent, v.
ANALISA N., Defendant and Appellant.

**COUNSEL**

Thorsnes, Bartolotta, McGuire & Padilla and Daral B. Mazzarella for Defendant and Appellant.

Neil, Dymott, Perkins, Brown & Frank, Hollywood & Neil and James A. McFall for Plaintiff and Respondent.

## OPINION

**BENKE, J.—**

### INTRODUCTION

In this case a third grade teacher sexually abused one of his pupils. In an underlying proceeding a $350,000 judgment was entered against him. At the time of the abuse the teacher was covered by an "Educators Employment Liability Policy." The policy covers events which occur in the course of activities performed by the teacher pursuant to the express or implied terms of his employment.　■■■　We find as a matter of law sexual abuse is unrelated to a teacher's employment and hence not within the coverage provided by the policy. Accordingly we affirm the trial court's order granting his insurer's motion for summary judgment.

### FACTUAL SUMMARY

Between January and March 1979 Analisa N. was sexually abused by her third grade teacher Carl A. Pejsa. The abuse occurred in Pejsa's classroom, during lunch breaks and after school. According to Analisa she was subjected to 20 separate incidents which included fondling, exhibitionism and masturbation. Prior to the molestations Analisa had been confiding in Pejsa about family problems she was experiencing. She had found him easy to talk to and she trusted him because he was her teacher.

On February 6, 1986, Analisa, by and through a guardian ad litem, filed a first amended complaint against Pejsa in which she sought damages for Pejsa's negligence and intentional misconduct. Pejsa tendered the defense of Analisa's claim to the Horace Mann Insurance Company (Horace Mann), which had issued him an Educators Employment Liability Policy.

Horace Mann provided Pejsa with a defense but reserved its right to contest its obligation to indemnify him. On September 25, 1987, Horace Mann filed a declaratory relief action against Analisa and Pejsa in which it sought a judgment determining it had no obligation to pay any judgment entered against Pejsa.

On October 8, 1987, Analisa dismissed all of her intentional tort claims against Pejsa with prejudice. On February 10, 1988, Analisa was awarded a $350,000 judgment against Pejsa.

Thereafter Horace Mann moved for summary judgment in the declaratory relief action. The company argued Pejsa's conduct is not within the coverage provided by the policy and that, in any event, coverage of sexual abuse is barred by a policy exclusion for intentional acts and Insurance Code section 533.[1] The trial court agreed with the company on both grounds and entered a judgment in its favor on July 6, 1988. Analisa filed a timely notice of appeal.

## ISSUES ON APPEAL

As one might expect on appeal Analisa argues Pejsa's conduct falls within the coverage provided by Horace Mann's policy and was not, as a matter of law, intentional or wilful conduct within the meaning of the policy exclusion or Insurance Code section 533. Because we find Pejsa's conduct was not a risk covered by the terms of the policy we affirm the judgment without considering the applicability of the policy exclusion or the Insurance Code.

## DISCUSSION

Horace Mann's policy provided the following coverage: "The Company agrees to pay all damages which the *insured* shall become legally obligated to pay as a result of any claim arising out of an *occurrence* in the course of the *insured's educational employment activities,* and caused by any acts or omissions of the *insured* or any other person for whose acts the *insured* is legally liable." The policy defines an occurrence as "an event which results in damages to someone other than the [insured.]" Educational employment activities are defined as activities performed: "1. *Pursuant to the express or implied terms of his/her employment by an* [italics ours] *educational unit,* or

"2. At the express request or with the express approval of his/her supervisor, provided that, at the time of such request or approval, the supervisor was performing what would appear to be his/her *educational employment activities* within the meaning of [part 1.]." In sum, coverage in this case depends upon whether Pejsa's acts occurred in the course of activities performed pursuant to the express or implied terms of his employment as a teacher.

In answering this question our initial response is the one our Supreme Court recently articulated in a factually similar context: "The question before us here is whether an employer (specifically, a school district) can be held liable for a sexual assault committed by an employee (here, a teacher)

---

[1] Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

on another person (particularly, on a student committed to that teacher's supervision). The natural, initial reaction is 'No! Of course not!' *A more personal escapade less related to an employer's interests is difficult to imagine.*" (*John R.* v. *Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 447 [256 Cal.Rptr. 766, 769 P.2d 948], italics added.) However, as in *John R.,* the question before us is not so easily disposed of. Like the issue of respondeat superior liability decided in *John R.,* the question here "is closer than might appear upon first examination." (*Ibid.*) Nonetheless, similar to the result reached in *John R.,* we ultimately conclude sexual abuse was not a risk covered by Horace Mann's policy.

First we note Analisa argues Pejsa's conduct was "within the scope of his employment" as that phrase has been used in imposing vicarious liability on employers under the doctrine of respondeat superior. If his conduct "was within the scope" of his employment, she asserts, it was also "in the course" of his employment activities within the meaning of the policy. In light of *John R.,* this avenue of argumentation is no longer available to her. In *John R.* the Supreme Court held that a school district is not vicariously liable for the sexual misconduct of its teachers. After considering the rationale underlying the respondeat superior doctrine and the detriment which would be caused by imposing vicarious liability, the Supreme Court found: "[T]he connection between the authority conferred on teachers to carry out their instructional duties and the abuse of that authority to indulge in personal, sexual misconduct is simply too attenuated to deem a sexual assault as falling within the range of risks allocable to a teacher's employer. It is not a cost this particular enterprise should bear, and the consequences of imposing liability are unacceptable." (*John R.* v. *Oakland Unified School Dist.,* *supra,* 48 Cal.3d at p. 452.)

Our inquiry, however, does not end with *John R.* The social costs of imposing vicarious liability on an employer, which the court considered in *John R.,* are of little assistance in interpreting the terms of an insurance policy. ■ Rather the rules which govern the interpretation of insurance policies call for a discrete analysis of the insured's reasonable expectations. "In determining what benefits or duties an insurer owes his insured pursuant to a contract of . . . insurance, the court may not look to the words of the policy alone, but must also consider the reasonable expectations of the public and the insured as to the type of service which the insurance entity holds itself out as ready to offer. [Citation.] Stated in another fashion, the provisions of the policy, ' "*must be construed so as to give the insured the protection which he reasonably had a right to expect* . . . ."' (Original italics.) (*Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 270, fn. 7 . . . .)" (*Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 941 [122 Cal.Rptr. 470].) ■ Consequently " '[a]ny ambiguity or uncertainty in an insurance policy is to be resolved against the

insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' [Citations.] . . . 'Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured . . . , exclusionary clauses are interpreted narrowly against the insurer. [Citations.]'" (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764].)

However, as generous as the rules of construction are to the insured, "The rule that any ambiguity in an insurance contract will be resolved adversely to the insurer is not without limitation. Some actual or apparent ambiguity must be present before the rule comes into play." (*Safeco Title Ins. Co.* v. *Moskopoulos* (1981) 116 Cal.App.3d 658, 665 [172 Cal.Rptr. 248, 18 A.L.R.4th 1301].) Moreover, "An insurance company may limit the coverage of a policy issued by it. When it has done so, the plain language of the limitation must be respected." (*Id.* at p. 666.)

Thus the fundamental question Analisa poses is whether a reasonable teacher could interpret the phrase "in the course of the insured's educational employment activities" to include sex acts performed at school during and shortly after school hours. Relying on workers' compensation cases which have interpreted the phrase "in the course of" as being broader than the term "acting within the scope of employment" under the doctrine of respondeat superior (see, e.g., *Munyon* v. *Ole's, Inc.* (1982) 136 Cal.App.3d 697, 703 [186 Cal.Rptr. 424]), she argues that the Horace Mann policy covered any conduct Pejsa engaged in with his students while at school. In essence she would apply a "but for" test to his conduct; coverage would exist if, but for his role as a teacher, the event would not have occurred.

We find Analisa's workers' compensation approach unpersuasive. First of all, we are unwilling to indulge the fiction that a reasonable insured should, or would, distinguish between a policy which covers acts "in the course of employment" and one which covers acts "within the scope of employment." In this regard we note that insurance policies must be read as a layman would read them and not as they might be analyzed by an attorney. (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]; *Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271 [203 Cal.Rptr. 672].) Moreover the wide breadth of the workers' compensation scheme is based upon factors entirely unrelated to the system of tort liability and liability insurance. "The goal of workers' compensation laws is to rehabilitate the injured worker, not to indemnify. [Citation.] In a tort action, the objective of a damage award is indemnification—compensating the injured party for the loss and harm suffered

by him and proximately caused by the accident." (*Munyon* v. *Ole's, Inc., supra,* 136 Cal.App.3d 697, 702.)

Contrary to Analisa's argument, in our view the plain language of the policy requires, at the very least, that an insured event occur while the teacher is engaged in an activity which is reasonably related to the goal of educating children. This conclusion is suggested not only by the language of the insuring clause and the applicable definitions, which, as we have seen, restrict coverage to activities performed pursuant to the terms of the teacher's employment, but by the very name of the policy—"Educators Employment Liability Policy." Given its terms and its title we do not believe a reasonable insured could expect that exclusively personal pursuits would be protected by the policy. Like the court in *John R.,* we cannot fathom a more personal activity less related to the goal of education than Pejsa's acts. Accordingly we must affirm the trial court's judgment.

In reaching this result we are not insensitive to the gravity of the injuries Analisa has suffered. Our sympathy for her however does not give us the power to expand the risks Horace Mann assumed in issuing a policy to Pejsa. Indeed were we to do so we would only increase the cost and availability of insurance for those teachers who run no small risk of liability by engaging in a myriad of extracurricular activities designed to enrich our children's lives.

Judgment affirmed.

Todd, Acting P. J., and Froehlich, J., concurred.