**SEQUOIA INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**ROYAL INSURANCE COMPANY OF AMERICA,** Defendant–Appellant.

No. 90–16820.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 1992.

Decided July 23, 1992.

William A. Bogdan, Lynch, Loofbourrow, Helmenstine, Gilardi & Grummer, San Francisco, Cal., for defendant-appellant.

Samuel F. Barnum, Barnum, Balthazar & DeLara, San Francisco, Cal., for plaintiff-appellee.

Before: TANG, BOOCHEVER, and PREGERSON, Circuit Judges.

BOOCHEVER, Circuit Judge:

This appeal involves a dispute between a primary insurer and an excess insurer, arising out of an automobile accident and a consequent wrongful death action. Royal Insurance Company appeals the entry of summary judgment in favor of Sequoia Insurance Company in Sequoia's action to recover the portion of the wrongful death judgment it paid in excess of policy limits. As is common in insurance disputes, the threshold issue with which we are presented is policy coverage. Beyond that, this case also presents a novel question under California law: whether in an action brought by a primary insurer, an excess insurer may raise defensively or by way of a declaratory judgment counterclaim the primary insurer's alleged bad faith breach of the duty to settle. Finally, we must determine whether the primary insurer failed to keep the excess insurer adequately informed of the underlying litigation, and if so, whether summary judgment for the primary insurer was nonetheless proper.

## BACKGROUND

The auto accident which led to this insurance dispute occurred in April 1981. Frank Ramirez was a passenger in a Dodge Ram Charger truck owned by Pleasant Prairie Farms and driven by Ronald Brock. Brock was test driving the truck after doing some mechanical work on it. Another vehicle allegedly pulled out in front of the Ram Charger at a cross street. Brock, who was driving in excess of the speed limit, swerved to avoid the other vehicle, skidded across the intersection, and collided with a palm tree. Ramirez was killed instantly.

Pleasant Prairie Farms insured its truck under a policy issued by Sequoia Insurance Company. Brock held an insurance policy on his 24-foot Winnebago recreational vehicle (RV) issued by Royal Insurance Company. Ramirez' survivors brought a wrongful death action against Pleasant Prairie Farms and Brock, among others. *See Ramirez v. Brock*, No. 279230-7 (Cal.Super.Ct.1985). Sequoia defended its insured, Pleasant Prairie Farms. After unsuccessful settlement negotiations, in which Sequoia rejected repeated offers from the *Ramirez* plaintiffs to settle within its $500,000 policy limits, the case went to trial. A jury awarded the plaintiffs $700,000. Sequoia paid the judgment in full.

A year and a half after the jury verdict and while the case was on appeal, Sequoia sought reimbursement for the excess from Royal. When Royal denied the excess claim, Sequoia sued for declaratory relief, subrogation, and contribution. Royal counterclaimed for equitable subrogation and a judicial declaration that it was not liable, based on Sequoia's alleged bad faith failure to settle. The district court entered judgment for Sequoia on Sequoia's motion for summary judgment. The court declared that Royal's policy provided excess coverage for the accident. It rejected Royal's equitable subrogation counterclaim, ruling that Royal lacked standing as a subrogee because it had not yet paid the disputed amount. Finally, it ordered Royal to pay Sequoia its $100,000 policy limits, plus a pro rata share of post-judgment defense

costs and interest. This timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the summary judgment and remand.

### DISCUSSION

We review the district court's grant of summary judgment *de novo*, examining the record and making all factual inferences in favor of Royal, as the nonmoving party, to determine whether a genuine issue of material fact exists or whether Sequoia, as the moving party, is entitled to judgment as a matter of law. *See State Farm Mut. Auto. Ins. Co. v. Khoe*, 884 F.2d 401, 404 (9th Cir.1989). This is a diversity case arising in California, and California law applies. *Allstate Ins. Co. v. Smith*, 929 F.2d 447, 449 (9th Cir.1991).

### I. *Policy Coverage*

Royal's policy provided primary insurance on Brock's Winnebago RV. The threshold dispute in this case is whether it also provided insurance on an excess basis for Brock's operation of certain vehicles he did not own under the policy's "Individual Named Insured" endorsement. The parties agree that this endorsement provides coverage only if a four-wheel RV like Brock's Winnebago comes within the policy's definition of "four wheel private passenger automobile." The district court concluded that an RV does come within this definition, and that therefore Royal's policy provided excess coverage for Brock's operation of the truck involved in the accident. We agree.

The pertinent portions of the policy provide:

### BASIC AUTOMOBILE DECLARATIONS
\* \* \* \* \* \*

Description of *owned automobile* or trailer Winnebago 24 ft.
\* \* \* \* \* \*

### BASIC AUTOMOTIVE LIABILITY AND PHYSICAL DAMAGE POLICY
\* \* \* \* \* \*

VI. Definitions

[W]hen used in this policy (including endorsements forming a part hereof):

"automobile" means a land motor vehicle, trailer, or semi-trailer designed for travel on public roads....
\* \* \* \* \* \*

VII. Additional Definitions
\* \* \* \* \* \*

*"private passenger automobile" means* a private passenger or station wagon type automobile and *any automobile the purpose of use of which is stated in the declarations as pleasure and business.*
\* \* \* \* \* \*

"pleasure and business" means personal, pleasure, family and business use.
\* \* \* \* \* \*

### MOTOR COACH AMENDATORY ENDORSEMENT
\* \* \* \* \* \*

2. For purposes of this policy a "motor coach" shall be defined as a self-propelled land motor vehicle equipped as living quarters (including cooking, dining, plumbing or refrigeration facilities) and used principally for recreational purposes.

3. *Whenever the term "automobile" appears in this policy, it shall be deemed to include the term "motor coach."*
\* \* \* \* \* \*

### INDIVIDUAL NAMED INSURED
\* \* \* \* \* \*

3. Additional Definitions
\* \* \* \* \* \*

"other automobile" means an automobile or a utility trailer not owned by or furnished for the regular use of either the individual named insured or any relative; but "other automobile" does not include a temporary substitute automobile;
\* \* \* \* \* \*

4. Family Automobile Coverage
*If during the policy period the individual named insured owns a four*

*wheel private passenger automobile,* farm automobile or utility automobile which is an owned automobile *covered by the policy and which is maintained or used principally for purposes other than the automobile business, the insurance afforded applies* subject to the foregoing provisions of this endorsement and to the following additional provisions:

&ast; &ast; &ast; &ast; &ast; &ast;

B. *With respect to other automobiles,* the insurance afforded also applies subject to the following additional provisions:

(1) *each of the following is an insured* under the Coverages for bodily injury liability and property damage liability to the extent set forth below:
 (a) *the individual named insured,*

&ast; &ast; &ast; &ast; &ast; &ast;

(3) *this insurance with respect to other automobiles shall be excess insurance over any other valid and collectible insurance available to the insured.*

&ast; &ast; &ast; &ast; &ast; &ast;

Complaint, Ex. A (emphasis added).

Sequoia contends that under the terms of the "Family Automobile Coverage" provision of the Individual Named Insured endorsement, Royal's policy furnished excess insurance over the limits of Sequoia's policy for Brock's operation of the Pleasant Prairie Farms truck. The truck which Brock was driving at the time of the accident was not owned or furnished for his regular use, and was not a temporary substitute automobile. It therefore qualifies under the policy as an "other automobile." For the insured's operation of "other automobiles" to be covered, however, a further condition must be met: the insured must own a four-wheel private passenger automobile which is covered by the policy. The only vehicle covered by the policy is Brock's four-wheel, 24–foot Winnebago RV, which the policy refers to as a "motor coach." Royal contends that the condition precedent to coverage is not met because a "motor coach" is not a "private passenger automobile."

In interpreting an insurance policy, we are guided by its plain language as it would be understood by a layperson. *See Horace Mann Ins. Co. v. Analisa N.,* 214 Cal.App.3d 850, 263 Cal.Rptr. 61, 63 (1989). We find the policy's plain language dispositive here. The policy provides that the term "automobile," wherever used, includes the term "motor coach." It further defines "a private passenger automobile" as *"any* automobile [for which] the purpose of use ... is ... pleasure and business." "Pleasure and business" are defined in turn as "personal, pleasure, family and business use." Complaint, Ex. A (emphasis added). Because it is an automobile, if a motor coach is used for these purposes, the coverage applies.

The policy defines "motor coach" as a "vehicle equipped as living quarters ... and used principally for recreational purposes." *Id.* Royal argues that "personal, pleasure, family and business use" has a meaning under the policy different from "equipped as living quarters and used principally for recreational purposes," and therefore "motor coach" is a vehicle classification different from "private passenger automobile." We disagree. We find nothing inconsistent between an automobile whose principal use is recreational and one whose use is for pleasure. In fact, recreational use is generally tantamount to use for pleasure.

Even if there is some question as to the similarity in meaning of these terms, such doubts are resolved by Noah Webster, for where a term's meaning is ambiguous we may consult dictionary definitions. If the dictionary contains "a range of reasonable meanings," we "must apply the meaning which provides the most coverage for the insured." *Poland v. Martin,* 761 F.2d 546, 548 (9th Cir.1985) (citing *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 180 Cal. Rptr. 628, 640 P.2d 764, 769–70 (1982)). Dictionary definitions of "recreation" include "diversion, play ... a means of getting diversion or entertainment." *Webster's Third New International Dictionary* 1899 (unabridged 1976). The policy's definition of "private passenger automo-

bile" as any automobile used for pleasure is therefore broad enough to include automobiles used for recreation, such as motor coaches.

Royal urges us to consider the extrinsic evidence it submitted to the district court in determining whether coverage exists. California law directs that in interpreting ambiguous insurance policy language "the meaning of [an insurance] policy must be tested in accordance with the insured's reasonable expectation of coverage." *See Employers Casualty Co. v. Northwestern Nat'l Ins. Group,* 109 Cal.App.3d 462, 167 Cal.Rptr. 296, 300 (1980) (citing *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)), *overruled on other grounds, In re Marriage of Arceneaux,* 51 Cal.3d 1130, 275 Cal.Rptr. 797, 800 P.2d 1227 (1990); *see also Occidental Fire & Casualty Co. v. Lumbermens Mut. Casualty Co.,* 667 F.Supp. 679, 684 (N.D.Cal. 1987) (court may consider extrinsic evidence to determine parties' reasonable coverage expectations). We address Royal's argument, although we find little, if any, ambiguity in the policy. Moreover, in doing so we assume without deciding that an insured's reasonable expectations may be considered to restrict rather than to expand coverage. *Cf., e.g., Horace Mann,* 263 Cal. Rptr. at 63 (insurance provisions should be construed in accord with the insured's reasonable expectations so as to provide coverage). In reviewing the extrinsic evidence Royal submitted, however, we find it utterly unhelpful.

█ To support its argument that a material dispute existed as to Brock's reasonable expectations of coverage, Royal submitted the deposition testimony of Daniel Andersen, a partner in the insurance agency which sold Brock the policy insuring his Winnebago. Mr. Andersen, however, did not personally sell Brock the Royal policy, nor had he ever spoken to Brock about it. When asked about his understanding as to whether the motor coach policy covered the insured's use of non-owned automobiles, Anderson replied, "I don't know. I would have to look at the form." Clerk's Record (hereafter CR) 44, Ex. B at 34. This evidence was irrelevant to Brock's expectations of coverage, and insufficient to put this issue into dispute.

█] Where an ambiguity cannot be resolved by resort to extrinsic evidence we resolve ambiguities in insurance policy provisions in favor of the insured. *See Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.G.,* 3 Cal.3d 434, 91 Cal.Rptr. 6, 476 P.2d 406, 410 & n. 5 (1970); *see, e.g., Allstate v. Smith,* 929 F.2d at 449–50. Thus, even if Royal's policy terms are ambiguous, we nonetheless interpret them to provide coverage for Brock's operation of the Pleasant Prairie Farms truck.

## II. Bad Faith Failure To Settle Within Policy Limits

█] Royal argues that even if its policy afforded coverage, summary judgment for Sequoia was improper. It contends that the equitable defense and counterclaims it raised present a material dispute as to Sequoia's entitlement to recover for the excess judgment on the basis of its bad faith refusal to settle the *Ramirez* lawsuit within its policy limits. We agree.

The record discloses that before trial Sequoia rejected numerous settlement offers within the limits of its $500,000 policy: $250,000, $300,000, $465,400, and $500,000. The *Ramirez* plaintiffs had informed Sequoia of their expert's determination regarding the amount of damages for loss of Ramirez' future earnings, which alone exceeded the policy limits. Sequoia's attorney had counseled that a defense verdict was in doubt as Brock had been speeding, and therefore could be found negligent *per se.* Moreover, the attorney noted that because the other motorist involved was uninsured, in the event Brock were found even minimally responsible for the accident, Sequoia's insured would face liability for the entire judgment. Despite this information, Sequoia set a settlement limit of $125,000 on the claim and went to trial rather than settle within its policy limits. The result was a $700,000 judgment for the plaintiffs.

When Sequoia sued Royal for declaratory relief, subrogation, and contribution, Royal raised Sequoia's failure to settle

both as an affirmative defense and in two counterclaims. Royal argued defensively that Sequoia's bad faith in refusing to settle within its policy limits barred it, under a theory of unclean hands, from any right to relief. In a declaratory relief counterclaim, Royal sought a determination that it was not obligated to satisfy any portion of the judgment, because Sequoia "is solely liable for the full amount of the judgment rendered in the underlying *Rammirez* [sic] action, arising out of Sequoia's own failure to promptly and fairly negotiate a settlement ... within the primary limits of the Sequoia policy." CR 5 at 12. In a subrogation counterclaim, Royal sought damages under the same theory to compensate it for any amounts awarded Sequoia on the excess policy.

The district court rejected Royal's subrogation counterclaim because payment is a prerequisite for a subrogation action and Royal had not yet paid Sequoia. *See Employers Mut. Liab. Ins. Co. v. Pacific Indem. Co.*, 167 Cal.App.2d 369, 334 P.2d 658, 662 (1959). The court, however, did not address Royal's declaratory relief counterclaim or its affirmative defense of unclean hands. We initially inquire, therefore, whether the issue of Sequoia's bad faith failure to settle was properly before the court apart from the subrogation counterclaim.[1] If it was, we then must determine whether Royal's evidentiary showing was sufficient to preclude summary judgment.

■ Under California law, an insurer is under an affirmative duty to its insured to settle a claim whenever there is a substantial likelihood of recovery in excess of its policy limits. *Continental Casualty Co. v. United States Fidelity & Guar. Co.*, 516 F.Supp. 384, 387 (N.D.Cal.1981) (citing *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198, 201 (1958) and *Johansen v. California State Auto. Ass'n Inter–Ins. Bureau*, 15 Cal.3d 9, 123 Cal. Rptr. 288, 538 P.2d 744 (1975)). "[A]n insurer who fails to act in good faith in rejecting a settlement demand is liable for the entire amount of judgment against the insured, including any portion in excess of policy limits." *Continental Casualty*, 516 F.Supp. at 387.

■ Although the primary insurer owes no direct duty of settlement within policy limits to the excess insurer, California recognizes the right of an excess insurer who has fully paid the insured's judgment to bring an action against the primary insurer for wrongful refusal to settle based on the theory of equitable subrogation. *Commercial Union Assurance Cos. v. Safeway Stores Inc.*, 26 Cal.3d 912, 164 Cal.Rptr. 709, 610 P.2d 1038, 1041 (1980). We do not interpret this California precedent, however, as limiting the form for raising such issues to subrogation actions. Rather, we read in it a broader and more elementary principle: that the issue of an insurer's bad faith refusal to settle may be raised in litigation between primary and excess insurance carriers whenever the underlying judgment has been fully paid. To require an excess insurer defending a subrogation action first to pay the plaintiff primary carrier, and then institute yet another subrogation action to recover that payment from the primary carrier, would be an unjustifiable waste of judicial resources.

■ Moreover, the law of subrogation indicates that a primary insurer's bad faith refusal to settle is properly raised defensively by an excess carrier in an action such as this. Two essential elements of a subrogation claim are that "[t]he debt paid must be one for which the subrogee was *not* primarily liable," and that ordering the defendant to pay the subrogee will "not work any injustice." *Employers Mutual*, 334 P.2d at 662 (emphasis added). If Sequoia, as the subrogee in this action, breached its duty to settle within policy limits, Sequoia, not Royal, would be liable to the *Ramirez* plaintiffs for any excess, and its subrogation claim would fail in the face of its own liability. Furthermore, re-

---

1. Royal argues that it is entitled to counterclaim for subrogation before payment under a "pre-subrogation" theory. We decline to venture into this thicket of insurance law, however, as it is unnecessary to our ultimate determination that the issue was properly presented to the court as either an affirmative defense or a declaratory judgment counterclaim.

quiring Royal to pay an excess judgment that was the result of Sequoia's own bad faith would work an injustice. Therefore, Sequoia's breach of the duty to settle is properly raised defensively to counter Sequoia's subrogation claim. Similarly, it may be raised defensively against Sequoia's declaratory judgment and contribution claims. *See Occidental Fire & Casualty Co. v. Lumbermens Mut. Casualty Co.*, 667 F.Supp. 679, 688 (N.D.Cal.1987) (under California law, "an insurer who breaches the implied covenant of good faith and fair dealing by failing to settle a claim may not recover contribution for that portion of the loss that exceeded its policy limits.").

An analogous question arose in *Commercial Union Insurance Co. v. Ford Motor Co.*, 599 F.Supp. 1271 (N.D.Cal.1984), where the district court, applying California law, held that the insurer's breach of its duty to settle could be raised defensively in an indemnity action by a party to whom the duty did not run. In *Ford*, an auto dealer's insurance company, Commercial, had repeatedly refused a personal injury plaintiff's settlement demands that were at or below its $500,000 policy limit, as Sequoia did here. Commercial was aware of the plaintiffs' expert testimony regarding damages and of a likely verdict in excess of policy limits, again like Sequoia. At trial the plaintiff received a judgment of $3,250,000. Commercial paid the full amount of the judgment, as did Sequoia, and then instituted an action against Ford Motors for equitable indemnity based on Ford's allegedly defective automobile design. *Id.* at 1273–74.

The *Ford* court determined that Commercial's conduct was, as a matter of law, unreasonable and a breach of its duty to settle in good faith. *Ford*, 599 F.Supp. at 1275. The court rejected Commercial's arguments, nearly identical to those Sequoia raises here, that Ford Motors lacked stand-

ing to raise defensively the insurer's breach of the duty to settle. Even though Ford could not have brought such claims as an independent suit, the court noted, equity and public policy required that the claims be heard defensively. *Id.* at 1276. The court concluded that Ford could not be held liable for the excess amount because Commercial's excess liability was the result of its *"own* breach of the duty which it owed to its insured." *Id.*

Sequoia argues that *Ford* is inapposite because it involved indemnity, rather than equitable subrogation. The underlying rationale, it contends, for allowing Ford to raise defensively the insurer's bad faith was because a subrogation action was unavailable to Ford. That rationale admittedly is not present here, inasmuch as Royal would have an opportunity to raise this issue in a separate subrogation action against Sequoia. Requiring it to do so, however, would serve no useful purpose and would offend the policies of judicial economy which play so important a role in our judicial system. Moreover, as we discussed above, a subrogee's bad faith breach of its duty to settle defeats its subrogation claim. Thus, the reasons for allowing such an issue to be raised defensively in a subrogation action are equally as compelling as in an indemnity action. As the *Ramirez* plaintiffs' claim has already been fully paid, we can see no further reason to require Royal first to pay the excess to Sequoia, and then to seek subrogation from Sequoia.[2]

We hold that Royal properly raised Sequoia's breach of the duty to settle in defending against Sequoia's subrogation, declaratory judgment, and contribution claims, either by way of an affirmative defense or a counterclaim for declaratory relief. Moreover, the evidence Royal presented was sufficient to raise a triable issue as to this defense.[3] Before trial, Sequoia knew that

---

**2.** We express no opinion as to whether the same rule would apply if the excess had not been paid.

**3.** Royal did not move for summary judgment on the issue of Sequoia's alleged bad faith refusal to settle, and argues on appeal only that a mate-

rial dispute is presented precluding summary judgment for Sequoia. We therefore do not consider whether the facts indicate that Sequoia breached its duty of good faith as a matter of law. *Cf. Ford*, 599 F.Supp. at 1274–75 (although normally a triable issue of fact, moving party may be able to establish by undisputed facts

Brock could be found negligent *per se*, that its insured would be liable for the entire judgment in the event of a verdict for the plaintiffs, and that the plaintiffs' expert would testify that damages for lost wages alone were well in excess of Sequoia's policy limits. Nonetheless, Sequoia rejected the plaintiffs' repeated settlement overtures at or below those limits. The $700,000 judgment exceeded Sequoia's policy limits by $200,000. Because this evidence presents a factual dispute over whether Sequoia's failure to settle was a breach of its duty to protect its insured from a substantial likelihood of a judgment in excess of policy limits, summary judgment was improper.

### III. *Notice and Cooperation Requirements*

■■■ Royal also argues that its affirmative defense alleging Sequoia's noncompliance with the notice and cooperation requirements of Royal's policy raises a material dispute as to its entitlement to subrogation. We agree.

The accident occurred in April 1981, and thereafter Sequoia notified Royal of the potential claim. In August 1981, Royal responded by letter, requesting Sequoia to advise Royal "immediately should any claims or suits exceed your available limits." CR 44, Ex. C at 80. The *Ramirez* lawsuit was filed approximately six months after this request from Royal, yet it was five years before Royal again heard from Sequoia. In August 1986, over a year and a half after the *Ramirez* verdict, Sequoia notified Royal of its excess liability.

The relevant portions of Royal's policy read:

### CONDITIONS
\* \* \* \* \* \*

4. Insured's Duties in the Event of Occurrence, Claim or Suit

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with

that duty to settle in good faith was breached as

respect to the time, place and circumstances thereof, and the name and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(b) If *claim is made or suit is brought* against the insured, the insured shall immediately forward to the company *every demand, notice, summons or other process* received by him or his representative.

(c) *The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits* and in enforcing any right of contribution or indemnity. . . .

5. Action Against Company

No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy. . . .

Complaint, Ex. A at 7–8 (emphasis added).

■■■ As Brock's subrogee, Sequoia assumed the position of Royal's insured and, technically at least, was subject to the policy's notice and cooperation conditions. Where a primary insurer assumes the position of an insured in regard to the excess insurer, however, we have declined to enforce strictly the terms of such conditions. For example, in *Bohemia, Inc. v. Home Insurance Co.*, 725 F.2d 506, 513–14 (9th Cir.1984), we held that the primary insurer's duty to keep the excess insurer informed of the progress of the litigation was satisfied under Oregon law when it notified the excess insurer that the claim might involve its excess policy and kept it apprised of "significant developments" in the case.

■■■ Even under this relaxed standard, Sequoia failed to satisfy its duties of notification and cooperation. It did not notify Royal of the possibility of an excess judgment in the *Ramirez* suit when this possibility arose—namely, when the plaintiffs' economist had projected the value of lost wages alone as exceeding policy limits and

a matter of law).

**1394**

when Sequoia's attorney advised Sequoia of the likelihood that it would be held liable for the entire judgment. Nor did Sequoia notify Royal of another significant development in the litigation, the plaintiffs' policy limits demand and their subsequent withdrawal of the demand in favor of proceeding to trial.

 As Brock's subrogee, Sequoia is subject to all the defenses Royal could have asserted against Brock as the insured. *Smith v. Parks Manor*, 197 Cal.App.3d 872, 243 Cal.Rptr. 256, 261 (1987). Noncompliance with notice and cooperation provisions, however, will bar recovery only if the insurer can establish substantial prejudice as a result. *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098, 1106–07 (1978) (citing *Campbell v. Allstate Ins. Co.*, 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155, 156–57 (1963)). Sequoia argues that Royal cannot establish prejudice because even had it received notice during the *Ramirez* lawsuit of its excess exposure and been kept apprised of the litigation, Royal still would have denied coverage. Simply because Royal has chosen lack of coverage as a theory of defense in this subrogation action, however, does not establish the absence of a material, factual dispute as to prejudice.

 The question of prejudice to an insurer is ordinarily one of fact. *Northwestern Title Sec. Co. v. Flack*, 6 Cal. App.3d 134, 85 Cal.Rptr. 693, 696–97 (1970). An insurer may be prejudiced because lack of notice or information prevented an earlier settlement of the claim at a lower amount. *See id.* 85 Cal.Rptr. at 698. It is undisputed that because of Sequoia's failure to settle within its policy limits, Royal faces potential exposure for the excess. Even if on remand the court finds that Sequoia did not act in bad faith in refusing to settle, a factual issue remains as to any prejudice Royal suffered from arguably bad business judgment on Sequoia's part which might have been avoided by Royal's participation. *Cf. Diamond Heights*

*Homeowners Ass'n v. National American Ins. Co.*, 227 Cal.App.3d 563, 277 Cal.Rptr. 906, 913 (1991) ("The primary insurer is assisted, not impeded, by the active participation of another carrier with a stake in the [settlement] negotiations.... When settlement value hovers over the fringes of both [primary and excess] policies, both carriers may collaborate.") (quoting *Transit Casualty Co. v. Spink Corp.*, 94 Cal. App.3d 124, 156 Cal.Rptr. 360, 367 (1979), *disapproved in part on other grounds, Commercial Union v. Safeway*, 26 Cal.3d 912, 164 Cal.Rptr. 709, 610 P.2d 1038), *rev. denied* (1980). We find it entirely likely that, as Royal argues, if kept even minimally informed of the *Ramirez* litigation, Royal would have monitored the settlement discussions so as to assist Sequoia in evaluating the claim and to encourage settlement within policy limits. Because the prejudicial effect of Sequoia's breach of the policy's notice and cooperation conditions presents a question of fact, summary judgment was improper.

## CONCLUSION

The district court erred in entering judgment for Sequoia, for material issues of fact remain unresolved concerning Sequoia's bad faith duty to settle and the effect of its noncompliance with policy conditions. We therefore reverse the entry of judgment for Sequoia, and remand for further proceedings on Royal's affirmative defenses and its counterclaim for declaratory relief.[4]

REVERSED and REMANDED.

---

4. Because we reverse the entry of summary judgment, we do not reach Royal's remaining

contentions on appeal, which concern the amount of its liability.