D.A.C. sued Horace Mann Insurance Company, seeking a recovery pursuant to the Direct Action Statute of the Alabama Insurance Code, § 27-23-2, Ala. Code 1975. Following oral proceedings, the trial court entered an order in favor of D.A.C.; Horace Mann appeals.
In April 1993, D.A.C. sued one of her teachers, alleging that he had sexually molested her when she was 14 years old. A jury returned a verdict against the teacher, awarding D.A.C. $3,000 in compensatory damages and $10,000 in punitive damages; the court entered a judgment on the verdict.
When the acts that formed the basis of the liability case were committed, the teacher was insured by Horace Mann. Horace Mann provided insurance coverage to members of the state affiliates of the National Education Association ("NEA"), under the Educator's Employment Liability Program. The coverage was provided in accordance with a written agreement between NEA and Horace Mann. The Alabama Education Association ("AEA") is a state affiliate of the NEA. Pursuant to its agreement with the NEA, Horace Mann issued certificates of insurance to members of the AEA, including D.A.C.'s teacher.
D.A.C. demanded that Horace Mann indemnify the teacher as to the $13,000 judgment. Horace Mann refused, denying that the subject judgment was covered under the insurance policy.
The trial court found that there was coverage, for the following reasons:
 "Since the alleged wrongdoing occurred in the classroom and while [the teacher] was instructing [D.A.C.] in math, the subject policy provides coverage under its Part III(A). The 'intentional act' exclusion is inapplicable as to the assault and battery theory since, under that theory, the jury did not have to find a sexual molestation or intent. The general verdict rendered by the jury could have been and was in the opinion of the Court predicated on finding *Page 1275 
that [the teacher] assaulted and/or battered [D.A.C.]. Thus, there was coverage, and no exclusion applies."
Horace Mann initially argues that the court erred in finding that the teacher's acts for which he was held liable were performed during "educational employment activities," thereby triggering coverage under Part III(A) of the policy.
Part III(A) of the policy provides:
 "EDUCATORS LIABILITY. We agree to pay all damages which you shall become legally required to pay as a result of any claim: which comes from an occurrence in the course of your educational employment activities; and which is caused by your acts or omissions or those of other persons for whose acts you are held liable, not to exceed the limit of coverage stated in the declarations for this coverage."
The policy defines "occurrence" as follows: "The term 'Occurrence' means an event which results in damages to someone other than the Insured. An occurrence can involve a single sudden event or the continuous or repeated exposure to conditions." It defines "educational employment activities" as follows: "The term 'Educational Employment Activities' means the activities of the Insured performed: 1. pursuant to express implied terms of his or her employment by an educational unit. . . ."
The court found that there was coverage, because the sexual molestation had occurred while the teacher was tutoring D.A.C. in math.
In Horace Mann Ins. Co. v. Fore, 785 F. Supp. 947
(M.D. Ala. 1992), the United States District Court addressed this issue, finding authority from other jurisdictions to be persuasive and entering a summary judgment in favor of Horace Mann. The court stated:
 "While it is intuitively obvious that sexual abuse is not an activity concerned with education, there is case law amplifying the point. The court in Worcester Ins. Co. v. Fells Acres Day School, Inc., 408 Mass. 393, 413, 558 N.E.2d 958[, 971-72] (1990), noted that sexually abusive acts 'were not of the kind [a school employee] was employed to perform' and were not 'motivated . . . by a purpose to serve the employer.' Similarly, a California court construing the same policy provision as that at issue here found that, as a matter of law, sexual abuse is not identified with employment as a teacher and that the insurer had no duty to indemnify or defend an elementary school teacher who molested a pupil. Summary judgment was entered for the insurer. Horace Mann Ins. Co. v. Analisa N., 214 Cal.App.3d 850, 263 Cal.Rptr. 61 (1989). The court averred that it could not 'fathom a more personal activity less related to the goal of education' than a teacher's sexual abuse of his student. Analisa N., [214 Cal.App.3d at 856,] 263 Cal.Rptr. at 64."
785 F. Supp. at 948-49.
We find that court's reasoning to be persuasive, and we can find no Alabama authority to dispute its conclusion. Accordingly, we hold that the trial court erred in finding that the teacher's acts for which he was held liable to D.A.C. were "educational employment activities," thereby triggering coverage under Section III(A) of the policy.
Although that holding is dispositive of this appeal, we address the court's further finding that the "intentional damages" exclusion was not applicable to the facts of this case.
Coverage under the policy is excluded for "intentional damages." "Intentional damages" is defined in the policy as follows: "Intentional Damages. Part III(A) [Educators Liability] of this contract does not apply to occurrences involving damages which are the intended consequences of action taken by you or at your direction. . . ."
In addressing the "Intentional Damages" exclusion, the trial court in the instant case found the following:
 "There is no way for this Court to determine what theory the verdict was rendered [on] for the plaintiffs and against [the teacher]. Thus, if the verdict was not predicated on findings of sexual misconduct or intentional conduct towards the minor child, then the holding in State Farm Fire Casualty Co. v. Davis, 612 So.2d 458 (Ala. 1993), is not pertinent and *Page 1276 
an intent to damage or harm may not be inferred. . . . There is no evidence in front of this Court showing intent on [the teacher's] behalf."
In State Farm Fire Casualty Co. v. Davis, 612 So.2d 458
(Ala. 1993), our supreme court stated:
 "The rule applied by an overwhelming majority of courts is that, in cases involving sexual abuse of children, intent to injure is inferred as a matter of law 'regardless of claimed intent.' Whitt v. DeLeu, 707 F. Supp. 1011, 1016 (W.D.Wis. 1989). . ..
". . . .
 "Alabama now joins the growing number of states that have adopted the inferred-intent rule in child sex abuse cases. As Judge Carroll observed in Fore [785 F. Supp. 947], 'the inferred-intent rule has been adopted in other states that apply the subjective-intent standard to other categories of liability insurance cases.' 785 F. Supp. at 955. . . .
". . . .
 ". . . Additional support for our holding derives from 'the desire to place moral liability with the same precision with which we would place economic liability.' Fore, 785 F. Supp. at 955. As the Whitt court further stated:
 " '[The majority inferred-intent rule] stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. . . .'
"707 F. Supp. at 1016."
612 So.2d at 463-65.
D.A.C. asserted a variety of legal theories as bases for the teacher's liability. The court submitted to the jury five of D.A.C.'s theories, all of which were predicated upon acts of sexual molestation: negligence, wantonness, assault and battery, intentional misconduct, and the tort of outrage.
In Horace Mann Ins. Co. v. McGee, 840 F. Supp. 875
(M.D. Ala. 1994), the district court rejected the plaintiffs' efforts to avoid exclusionary language in a Horace Mann policy by suggesting that an alternative theory of liability was not within the scope of the "intentional damages" exclusion:
 "The [plaintiffs] argue that this exception [to the exclusion] provides coverage for their civil rights claims against [the insured teacher]. The Court disagrees. The civil rights claims are based on the same acts of sexual abuse as the other claims. Merely calling those acts violations of civil rights does not change the irrebuttable presumption of intent to cause injury in cases of sexual abuse of children."
840 F. Supp. at 879.
We conclude that the intentional-damages exclusion bars coverage for all harm directly attributable to the teacher's acts of sexual molestation.
The judgment is reversed and the case is remanded for the court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.