Kim GOODMAN; Angel Stice;
and Windy Star Meredith,
Appellants,

v.

HORACE MANN INSURANCE
COMPANY, Appellee.

No. 2000–CA–001924–MR.

Court of Appeals of Kentucky.

March 21, 2003.

Eli J. George, Jr., Louisville, KY, for appellants.

James W. Taylor, W. Brian Burnette, Lexington, KY, for appellee.

Before BARBER, McANULTY and SCHRODER, judges.

## OPINION

BARBER, Judge.

Appellants, Kim Goodman, Angel Stice, and Windy Star Meredith, seek review of an order of the Franklin Circuit Court granting summary judgment in favor of the Appellee, Horace Mann Insurance Company. The circuit court held that the inappropriate touching of a student is an intentional act, excluded from coverage under an educator's employment liability policy. We affirm for the reasons set forth below.

On May 3, 1999, Appellants filed a complaint and motion for declaratory judgment in the Franklin Circuit Court against Horace Mann. Appellants maintained Horace Mann was responsible for satisfying judgments entered in their favor against Donald Mullins, their former teacher. In the underlying Bullitt Circuit Court action, Appellants alleged that Mullins had sexually molested them while they were students at Shepherdsville Middle School.

On July 18, 2000, the Franklin Circuit Court entered summary judgment in favor of Horace Mann:

Plaintiffs, Kim Goodman, Angel Stice, and Wendy [sic] Star Meredith, were sixth-grade students of Mr. Mullins' shop class at Shepherdsville Middle School in the 1992–1993 school year. In March 1995, the parents of the Plaintiffs and another student, brought an action in Bullitt Circuit Court alleging that Mr. Mullins sexually molested the four girls during shop class. A criminal proceeding was also initiated in which Mr. Mullins was charged with two counts of first-degree sexual abuse for improperly touching the fourth student, who is not a party to this action. The jury was unable to return a verdict for the other three counts. On February 22, 1999, the civil cases against Mr. Mullins were settled and each Plaintiff was awarded $250,000. In the settlement Mr. Mullins stipulated that although he touched the Plaintiffs, his touchings were not intentional and were not for his sexual gratification. In addition, Mr. Mullins assigned and transferred to the Plaintiffs all of his rights and claims under [a policy of educator's employment liability insurance that Horace Mann provides to the Kentucky Education Association]. . . .

The circuit court reviewed relevant provisions of the policy:

OCCURRENCE. The term *"Occurrence"* means an event which results in damages to someone other than the *insured.* An *occurrence* can involve a single sudden event or the continuous or repeated exposure to conditions. If the latter, the exposure shall constitute a single occurrence and shall be deemed to have *occurred* as of the most recent exposure to said conditions.

. . . .

EDUCATOR'S LIABILITY. *We* agree to pay all damages which *you* shall become legally required to pay as a result of any claim which comes from an *occurrence* in the course of *your educational employment activities;* and which is caused by *your* acts or omissions or those of other persons for whose acts *you* are held liable, not to exceed the limit of coverage stated in the declarations for this coverage.

In addition to paying damages as indicated above, we shall do the following:

1. *We* shall defend a *civil proceeding* against *you:*

a. seeking damages which are payable under the terms of this contract; or

b. which alleges sexual or physical abuse and which in whole or in part comes from an *occurrence* in the course

of *your educational employment activities*, and which is caused by *your* acts or omissions or those of other persons for whose acts *you* are held liable, even if such *civil proceeding* is groundless or fraudulent; but we may make such investigation, negotiation and settlement of any claim or *civil proceeding* as we deem expedient.

. . . .

Finally, coverage does not apply in the event of the following exclusion:

INTENTIONAL DAMAGES. Part III(A) of this Contract does not apply to *occurrences* involving damages which are the intended consequence of action taken by *you* or at *your* direction. There are three exceptions to this exclusion:

1. This action shall not apply if the action taken involves *corporal punishment.*

2. This exclusion shall not apply if the *civil proceeding* against *you* is based on an alleged violation of any civil rights guaranteed by the Constitution or Civil Rights statutes of the United States of or a state, unless it is expressly found by the trier of civil fact that in taking said action *you* specifically intended to violate the civil rights of the claimant.

3. This exclusion shall not apply if your responses to the allegations made against you in any *civil proceeding* indicate that the damages involved were not the intended consequence of action taken by *you* or at *your* direction. Except as otherwise specified in exception 2 of this exclusion, if evidence obtained as a result of investigation, litigation, or otherwise demonstrates that said responses are not credible, this exclusion shall thereafter apply . . . *We* shall be entitled to reimbursement for the attorneys fees, costs, and other expenses incurred by *us* in providing coverage to *you*.

. . . .

The Plaintiffs argue that this [intentional damages] exclusion should not apply because Mr. Mullins claims that he did not intend to cause any damages and his responses were credible. The Plaintiffs reason that Mr. Mullins' responses were credible because the jury did not convict him for the charges concerning the three Plaintiffs. Therefore, they argue, exception three applies to the exclusion, and coverage must be provided by the policy.

Horace Mann asserts, however, that Kentucky law prohibits a finding that Mr. Mullins did not intend to inflict damage upon the Plaintiffs. While sexual abuse has never been addressed in the context of an educator's employment liability policy in Kentucky, two decisions concerning homeowner's liability have addressed the issue of intent to injure in connection with sexual abuse. . . . *Goldsmith v Physicians Ins. Co. of Ohio,* Ky.App., 890 S.W.2d 644 (1994); *Thompson v. West American Ins. Co.,* Ky.App., 839 S.W.2d 579 (1992). . . . [T]he Court of Appeals . . . found that sexual molestation was so inherently injurious that intent to injure could be inferred as a matter of law. . . .

. . . .

While the Plaintiffs argue that this Court should not apply law concerning a homeowner's policy to an educator's liability policy, we (sic) find that the rationale concerning sexual misconduct is applicable in both cases. . . . Therefore, this Court will follow the reasoning of *Thompson* and *Goldsmith,* and infer that Mr. Mullins intended to damage the Plaintiffs. Accordingly, we must find that the Intentional Damages exclusion applies . . . and that the policy does not cover sexual abuse toward students.

. . . .

The Plaintiffs primarily argue that Mr. Mullins' conduct falls within the civil rights exception to the intentional damages exclusion....

However, Horace Mann argues that the same rationale used to infer intent ... should be used here to infer the intent to violate the Plaintiff's civil rights. Horace Mann cites from a federal district court case in Alabama involving a mirror of this Intentional Damages exclusion:

The civil rights claims are based on the same acts of sexual abuse as the other claims. Merely calling those acts violations of civil rights does not change the irrebuttable presumption to cause injury in cases of sexual abuse of children. The irrebuttable presumption ... applies to ... civil rights claims and means that Defendant McGee's intention to violate the civil rights of the children ... is presumed. Thus, the second exception to the Intentional Damages exclusion does not apply.

[*Horace Mann Ins. Co. v. McGee*, 840 F.Supp. 875, 879 (M.D.Ala.1994)].... Horace Mann also cites a Colorado Appeals Court case which held that the intentional acts exclusion precluded claims arising from a teacher's sexual molestation of a student, including civil rights claims. *Horace Mann Ins. Co. v. Peters*, Colo.App., 948 P.2d 80, 86 (1997). Horace Mann asserts that if Mr. Mullins specifically intended to violate Plaintiff's civil rights, then the exception to the Intentional Damages exclusion cannot apply. While not controlling, this Court finds the other jurisdictions cited are persuasive and we agree with them....

The court concluded, as a matter of law, that there was no coverage under the policy, because the "Intentional Acts" exclu-

sion applied, and the civil rights exception was not applicable.

On August 11, 2000, Appellants filed a notice of appeal to this Court. On appeal, Appellants assert that "[b]asically civil rights violations and sexual abuse are covered ... if they occurred during school classes." Interpretation of an insurance policy is a question of law which we review *de novo*.[1]

[I]n this state doubts concerning the meaning of contracts of insurance are resolved in favor of the insured. *State Auto. Mutual Ins. Co. v. Ellis*, Ky.App., 700 S.W.2d 801, 803 (1985). But, in the absence of ambiguities or of a statute to the contrary, the terms of an insurance policy will be enforced as drawn. *Osborne v. Unigard Indemnity Co.*, Ky.App., 719 S.W.2d 737, 740 (1986); *Woodard v. Calvert Fire Ins. Co.*, Ky., 239 S.W.2d 267, 269 (1951). Unless the terms contained in an insurance policy have acquired a technical meaning in law, they "must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Fryman v. Pilot Life Ins. Co.*, Ky., 704 S.W.2d 205, 206 (1986). Although restrictive interpretation of a standardized adhesion contract is not favored, neither is it the function of the courts to make a new contract for the parties to an insurance contract. *Moore v. Commonwealth Life Ins. Co.*, Ky.App., 759 S.W.2d 598, 599 (1988). Under the "doctrine of reasonable expectations," an insured is entitled to all the coverage he may reasonably expect to be provided according to the terms of the policy. *Woodson v.*

---

**1.** *Cinelli v. Ward*, Ky.App., 997 S.W.2d 474       (1998).

*Manhattan Life Ins. Co.*, Ky., 743 S.W.2d 835, 839 (1987).[2]

The policy is entitled, "Educator's Employment Liability Contract." Evaluation of an educator's liability policy requires consideration of the particular policy provisions, as does any coverage analysis. In claims made against teachers, the analysis includes whether the teacher's acts were within the meaning of educational employment activities.[3] We begin our analysis by examining the contract coverage, in Part III of the policy:

A. **EDUCATORS LIABILITY.** We agree to pay all damages which *you* shall become legally required to pay as a result of any claim; which comes from an *occurrence* in the course of *your educational employment activities;* and which is caused by *your* acts or omissions or those of other persons for whose acts *you* are held liable, not to exceed the limit of coverage stated in the declarations for this coverage.

(emphasis original).

Appellants argue that "Under Section III(A) of the policy, Horace Mann agrees to pay *all damages which [the insured] becomes legally required to pay as a result of any claim.*" We disagree. The plain language of the policy requires that, to be covered, any such claim must come from "an *occurrence* in the course of ... [the teacher's] *educational employment activities ....*" (emphasis original). The term is defined in Part II of the policy:

E. **EDUCATIONAL EMPLOYMENT ACTIVITIES.** The term *"Educational Employment Activities"* means the activities of the insured performed:

1. pursuant to the express or implied terms of his or her employment by an *educational unit;* (emphasis original).

An educational unit is also defined in Part II of the policy:

F. **EDUCATIONAL UNIT.** The term *"educational unit"* means a school district; a college or university; a state department of education; an Overseas Dependent School operated by the Department of Defense; any other institution which has as its primary purpose the instruction of students; or a division, department or other administrative unit of a governmental entity which does not have as its primary purpose the instruction of students, if the primary purpose of the administrative unit is the instruction of students; or a state board or commission which has as its primary purpose the licensure and certification of educators or the setting of standards for such licensure or certification.

Courts have consistently held that a teacher engaging in sexual molestation is not acting within his educational employment activities.[4] The California Court of Appeals addressed the issue in *Horace Mann Ins. Co. v. Analisa N,*[5] a case involving sexual abuse of a third-grade pupil. At the time of the abuse, the teacher was covered by an "Educators Employment Liability Policy." The insurer argued that the teacher's conduct was not within the coverage provided by the policy; further, that sexual abuse was barred by an intentional acts exclusion and a provision of the Insurance Code. As in the case *sub judice,* the policy in *Analisa N.* provided coverage for "all damages which the insured shall become legally obligated to pay as a result

---

**2.** *Hendrix v. Fireman's Fund Ins. Co.*, Ky.App., 823 S.W.2d 937, 938 (1991).

**3.** Harold A. Weston, Annotation *Educator's Liability Insurance,* 94 A.L.R.5th 567 (2001).

**4.** *Id.*

**5.** 214 Cal.App. 3d 850, 263 Cal.Rptr. 61 (1989).

of any claim arising out of an occurrence in the course of the insured's educational employment activities, and caused by any acts or omissions of the insured or any other person for whose acts the insured is legally liable."[6] Coverage there, as here, depended upon whether the teacher's acts occurred in the course of activities performed pursuant to the express or implied terms of his employment as a teacher.

In analyzing the issue, the California court considered the doctrine of reasonable expectations which requires construction of the policy so as to give the insured the protection he reasonably had a right to expect. Despite its sympathy for Analisa's injuries, the court declined to expand the risks assumed by the insurer in issuing a policy to the teacher. A reasonable insured could not expect that "exclusively personal pursuits" would be protected by the policy. At the very least, the policy required that an insured event occur "while the teacher is engaged in an activity ... reasonably related to the goal of educating children."[7] The court explained that this conclusion is suggested not only by the language of the insuring clause and the applicable definitions, which restrict coverage to activities performed pursuant to the terms of the

teacher's employment, but by the "very name of the policy—'Educator's Employment Liability Policy.'"[8] The California court could not fathom a more personal activity less related to the goal of education than the teacher's acts. This "eminently reasonable conclusion" was found to be persuasive authority by the court in *Horace Mann v. Fore*, which stated that "it is intuitively obvious that sexual abuse is not an activity concerned with education...."[9]

 We, too, are persuaded by this reasoning, and adopt it as our own. We conclude that Mullins' conduct is not a risk covered by the policy. We affirm the order of the Franklin Circuit Court, without addressing the intentional acts exclusion, other than to note that Kentucky applies "the inferred-intent rule" in the area of insurance-child molestation law.[10]

ALL CONCUR.

---

6. *Id.*, 214 Cal.App.3d at 853, 263 Cal.Rptr. 61.

7. *Id.* at 856, 263 Cal.Rptr. 61.

8. *Id.*

9. *Horace Mann Insurance Co., v. Fore,* 785 F.Supp. 947, 948–49 (M.D.Ala.1992).

10. *Goldsmith v. Physicians Insurance Company of Ohio,* Ky., 890 S.W.2d 644 (1995); *Thompson v. West American Insurance Company,* Ky., 839 S.W.2d 579 (1992).