United States District Judge Truman Hobbs has certified to this Court several questions pursuant to Rule 18, Ala.R.App.P. Those questions call for us to consider whether State Farm Fire and Casualty Company, under the terms of a homeowner's policy, was under a duty to defend its insureds in a civil action against its insureds alleging sexual abuse and molestation of minor children.
On September 21, 1990, four mothers, suing on behalf of their minor daughters, sued Jerry and Delores Davis in the Circuit Court for Chambers County, Alabama, alleging personal injury as the result of sexual abuse and molestation by Jerry Davis. The plaintiffs claimed on behalf of their respective children that the abuse took place in the Davises' home with the knowledge of Delores Davis. As a result of this alleged abuse, Jerry Davis pleaded guilty in state court to one count of sexual abuse in the second degree, in violation of § 13A-6-67, Ala. Code 1975.
On March 28, 1991, State Farm Fire and Casualty Company sued in the United States District Court for the Middle District of Alabama for a judgment declaring that, under its homeowner's policy issued to the Davises, it had no duty to indemnify or defend the Davises in the civil action brought by the mothers in Chambers County for damages based on personal injury resulting from the alleged sexual abuse and molestation of the children. The Davises answered State Farm's complaint, and the mothers (the plaintiffs in the underlying action) were allowed to intervene on May 6, 1991.
On February 11, 1992, Judge Hobbs requested this Court to consider questions of state law involved in the declaratory judgment action filed in the federal court. This Court consented to consider them. He certified the following questions:
 "A) Whether State Farm is relieved of any obligation to indemnify Jerry Davis or Delores Davis on the ground that to do so would be to offend the public policy of the state?
 "B) Despite the public policy contentions, would there be a duty to defend either or both Jerry and Delores Davis?
 "C) Would any of the stated policy exclusions apply and as a matter of law relieve a defendant of the duty to indemnify or defend either or both Jerry Davis and Delores Davis?
 "D) Would it be a factual question for the jury as to whether one or more of the exclusions would apply? If so, would the charge to the jury state that an objective or a subjective standard would apply in determining whether an exclusion applied? If the 'willful and malicious' exclusion is applicable to the testimony which has been stipulated, is it properly a determination by the court as a matter of law as to whether the acts were malicious and willful, or is it an issue for the jury? If the latter, is the *Page 460 
jury to apply an objective or a subjective standard?"
Because our answer to question C disposes of the issues presented in the declaratory judgment action, we need not address the remaining questions.
The State Farm policy, which the parties stipulate was in full force and effect at all pertinent times, contains the following exclusions:
 "1. Coverage L (Personal Liability) and Coverage M (Medical Payments to Others) do not apply to:
"a. bodily injury or property damage
 "(1) which is either expected or intended by an insured; or
 "(2) to any person or property which is the result of willful and malicious acts of an insured;"
(Emphasis added.)
This Court has never answered the question presented in a case in which sexual abuse or molestation was the cause of the alleged injury, but has considered the issue in other factual contexts, and has established rules of law to apply. InAlabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer,454 So.2d 921 (Ala. 1984), for example, this Court, in interpreting an analogous provision of an insurance contract, held that a purely subjective standard governed the determination of whether an insured either "expected or intended" to inflict bodily injury upon another. In Dyer, the insured shot and killed his brother after an argument over a water ski. The insured then committed suicide. The trial court found that the shooting of the brother was neither expected nor intended from the standpoint of the insured and entered a judgment accordingly. Farm Bureau appealed, but this Court affirmed. This Court reviewed its prior rulings wherein it had previously held that an intentional act could have an unexpected or unintended result and that insurance coverage can be extended in such a case.[1] In defining the purely subjective standard, the Court stated:
 "Under this subjective test, an injury is 'intended from the standpoint of the insured' if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is 'expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act."
454 So.2d at 925. In Dyer, the Court distinguished the subjective intent rationale from objective methodology by explaining as follows:
 "Because the presumption in tort and criminal law that a person intends the natural and probable consequences of his or her intentional acts has no application to the interpretation of the terms used in the 'expected or intended from the standpoint of the insured' policy exclusion, the policy term, 'expected or intended injury,' cannot be equated with 'foreseeable injury.' "
Id. Although the subjective intent test enunciated inDyer has been used in Alabama in several similar contexts,[2] our courts have never addressed a case where *Page 461 
an insured seeks indemnification for damages assessed because of the insured's sexual abuse of children.
In Alabama, because of this subjective intent test, whether an injury the insured inflicts upon another person is "expected or intended" from the standpoint of the insured is generally a question of fact for the jury or judge. White v. MarylandCas. Co., 589 So.2d 1294 (Ala. 1991); Dyer; Boyd v.Great Central Ins. Co., 401 So.2d 19 (Ala. 1981).
Our courts have never directly addressed the situation where an insured seeks indemnification for damages assessed because of sexual abuse or molestation of children, but two United States District Courts in Alabama have addressed the issue and have reached opposite results. In State Auto Mut. Ins. Co.v. McIntyre, 652 F. Supp. 1177 (N.D.Ala. 1987), a federal district court concluded that Dyer mandated that a subjective intent standard govern all manner of cases in which an exclusion for intentional acts existed. InMcIntyre, a grandfather, the insured, sued for a judgment declaring that he had coverage under his homeowner's policy for damages that might be assessed against him in a personal injury action arising out of a claim that he had sexually abused his granddaughter. The insured pleaded guilty to sexual abuse in the first degree and was sentenced to serve six years in the state penitentiary. In applying theDyer subjective intent test to that case, the court held:
 "This Court is fully persuaded that the pronouncements of the Supreme Court of Alabama in Dyer, Watson, Shirah, Portis, and Armstrong [see n. 2] govern the determination by this United States District Court of whether the insured, Edward McIntyre, either expected or intended to inflict bodily harm upon his minor granddaughter . . . when in a nonviolent way he sexually abused the child on one occasion in the McIntyre home in the summer of 1983 and again on another occasion approximately one year later at the same Alabama location. Moreover, this Court is bound by Alabama law to use and apply a purely subjective standard in making such determination from the evidentiary record in this declaratory judgment action. Under this subjective test, clearly and recently enunciated by Alabama's highest court in five recently reported decisions, supra, each involving an exclusion clause in a homeowner's insurance policy which is similar [to] or the same as the exclusion clause in . . . McIntyre's homeowner's insurance policy hereinabove set out or analogous thereto, an injury is 'intended or expected from the standpoint of the insured' if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is 'expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act. Furthermore, the law is well settled in Alabama that the question of whether an injury which the insured inflicts upon another is 'expected or intended from the standpoint of the insured' is a question of fact for the jury or judge, whichever is the trier of fact."
McIntyre, 652 F. Supp. at 1193-92.
The McIntyre court's reliance on Dyer and its progeny in the context of the sexual abuse of children is misplaced. The decision in McIntyre has been criticized and its validity questioned by those courts that have discussed it. In Horace Mann Ins. Co, v. Fore,785 F. Supp. 947 (M.D.Ala. 1992), where the insurer sought a declaration that, because of exceptions in its homeowner's policy, it owed no duty to defend or indemnify its insured, a school teacher, in a civil action based on alleged sexual abuse of three minor students, Judge Carroll stated that "no amount of qualification could persuade this court that [McIntyre] is correct." 785 F. Supp. at 949-50. TheFore court, in rejecting the McIntyre
interpretation of Alabama law in this context, distinguished cases such as Dyer from cases of sexual abuse as follows:
 "Dyer did not involve sexual abuse, but the discharge of a gun. This court finds that Dyer can easily be distinguished from the instant case and that the Dyer result had a certain internal logic that *Page 462 
the McIntyre result lacks. It might be plausibly argued, for example, that as a matter of metaphysics, a person such as the shooter in Dyer has a certain detachment from and ignorance of the mechanics of shooting even as he squeezes the trigger. Surely he knows that the gun will fire; surely he expects that when the gun fires the bullet will not fall ineffectually from the chamber onto the floor. But he cannot fully know until he has fired how the gun will react and what the bullet will do to its target. Obviously, in the state of Alabama, this realization of certain psychological or metaphysical workings aids an insured in his quest to force the insurer to pay for his deliberate act; Dyer
governs just the precise situation in which an insured acts more out of detached stupidity or blunted sensitivity to others than out of evident malice. [Footnote omitted.]
 "But there is no similar detachment caused by a lack of experimental knowledge of the consequences when one's body, rather than a gun, lead pipe, or bazooka, is the offending instrumentality. With sexual abuse, as presented in the McIntyre facts and the facts of the instant case, there is no intervening instrumentality that could malfunction or behave in a way that the operator could not predict. The body of the perpetrator is the instrumentality, and the thought or impulse he has to do harm is the governor of the instrumentality. The perpetrator alone controls his movements, and he knows the consequences of them. By virtue of a thousand ordinary, daily movements, he learns kinetics and sensations — his body is not a stranger with properties that surprise him. The Dyer case is thus distinguishable in an important physical respect from cases like McIntyre and the instant case."
Fore, 785 F. Supp. at 951-52. We agree with the reasoning of the Fore court.
Allstate Ins. Co. v. Roelfs, 698 F. Supp. 815
(D.Alaska 1987), dealt with a declaratory judgment action brought by the insurer where its insured's son had sexually molested two minor females. The court noted that provisions excluding coverage for bodily injury "expected or intended" by an insured have generally been construed to preclude coverage only when the actual injury or harm was intended, and not just when the act causing the injury was intended.698 F. Supp. at 819. The court also noted that "courts have developed three different approaches for determining whether the insured intended to cause injury and thus whether the exclusion applies to a particular case. See generally, [James L. Rigelhaupt] Annotation, ['Construction and Application of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured'] 31 A.L.R.4th 957 [1991]."698 F. Supp. at 815. The court in Roelfs discussed these three approaches as follows:
 "Some courts have held that the exclusion does not apply unless the insured subjectively intended to cause some injury. [Footnote omitted.] Courts adopting this approach will rarely decide the coverage question on a motion for summary judgment since the subjective intent of the insured is generally a question of fact. [This is the McIntyre and Dyer subjective intent approach.] [Citations omitted.] Other courts have used an objective test for determining the intent of the insured. [Footnote omitted.] These courts will apply the exclusion so long as an ordinary, reasonable person would expect or intend injury to result from the particular act committed, or, alternatively stated, if the natural and ordinary consequences of the act are bodily harm. Finally, a third group of courts, led by the state courts of Minnesota, have ruled that in sexual assault and molestation cases the intent to cause injury will be inferred from the act as a matter of law. [Footnote omitted.] These courts hold that the exclusion applies 'if a reason for the insured's act is to inflict bodily injury [subjective test] or "when the character of the act is such that an intention to inflict injury can be inferred" as a matter of law.' Fireman's Fund Ins. Co. v. Hill, 314 N.W.2d 834, 835 (Minn. 1982) (emphasis in original) (quoting Continental *Page 463 Western Ins. Co. v. Toal, 309 Minn. 169, 244 N.W.2d 121, 125 (1976))."
698 F. Supp. at 819-20. The Roelfs court followed the third approach referred to, holding that the intent to cause injury should be inferred as a matter of law from the act of sexual assault. 698 F. Supp. at 820. "This conclusion comports with the purposes of the intentional acts exclusion clause, which is to 'prevent extending to the insured a license to commit wanton and malicious acts.' Farmers Ins. Exchange v.Sipple, 255 N.W.2d 373, 375 (Minn. 1977)."698 F. Supp. at 820-21.
It is this third approach, clearly the majority rule in cases of sexual abuse of children, that McIntyre rejected in favor of the subjective intent test. As noted inRoelfs, 698 F. Supp. at 820 n. 5, the Dyer
case, upon which the McIntyre court based its decision, was based on the reasoning employed inContinental Western Ins. Co. v. Toal, 309 Minn. 169,244 N.W.2d 121 (1976). The Toal court, while adopting the subjective approach, also specifically stated the following:
 "[I]n Caspersen v. Webber, 298 Minn. 93, 99, 213 N.W.2d 327, 330 (1973), we indicated that an injury is 'expected or intended' from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury or 'when the character of the act is such that an intention to inflict an injury can be inferred' as a matter of law."
309 Minn. at 177, 244 N.W.2d at 125. (Emphasis added.)[3]
The Minnesota court in Toal reasoned that, while the subjective standard is to be followed generally, there are occasions when an insured's intention to inflict injury can be inferred from the nature of the insured's conduct itself. AfterToal was decided, the courts of Minnesota found such an inference in cases of sexual abuse. See Horace Mann Ins.Co. v. Independent School District No. 656, 355 N.W.2d 413
(Minn. 1984); Estate of Lehmann v. Metzger,355 N.W.2d 425 (Minn. 1984); Fireman's Fund Ins. Co. v. Hill,314 N.W.2d 834 (Minn. 1982).
The rule applied by an overwhelming majority of courts is that, in cases involving sexual abuse of children, intent to injure is inferred as a matter of law "regardless of claimed intent." Whitt v. DeLeu, 707 F. Supp. 1011, 1016
(W.D.Wis. 1989). In Whitt, the court was faced with an insured who had intentionally had unpermitted and offensive sexual contact with minors. The insured asserted that he did not intend or expect to cause physical or psychological injury or harm to the minors. The court noted that some 14 states had, at that time, considered the issue and had adopted the majority rule inferring the intent to cause injury as a matter of law in liability insurance cases involving sexual misconduct against minors.[4] 707 F. Supp. at 1014. *Page 464 
The Whitt court named Alabama, California, Colorado, Florida, and New Hampshire as states with courts that had followed the minority subjective-intent approach in child sex abuse cases. While this Court has not before today issued a decision regarding sexual misconduct involving minors, the supreme courts of the other four states that previously followed the minority approach have all now adopted the majority approach.[5]
Alabama now joins the growing number of states that have adopted the inferred-intent rule in child sex abuse cases. As Judge Carroll observed in Fore, "the inferred-intent rule has been adopted in other states that apply the subjective-intent standard to other categories of insurance liability cases." 785 F. Supp. at 955. Our holding today does not alter the holding of Dyer and its progeny, but only creates one narrow exception in cases of sexual abuse of children. As further stated in Fore:
 "Dyer is simply irrelevant to the almost universal rule of inferring intent to injure in child sexual abuse cases. As the Roelfs
court noted, where intent to injure is inferred as a matter of law from the nature of the act committed, the insured's subjective intent does not matter. Similarly, the objective standard, whereby a court would inquire whether a reasonable person doing the act would expect injury to result, is irrelevant. In a jurisdiction that follows the inferred-intent rule in cases involving insurance coverage for sexual abuse, it simply would not matter whether the jurisdiction applied the subjective or objective *Page 465 
test to the action of shooting a victim with a BB gun or hurling blacktop at him. See Roelfs, 698 F. Supp. at 820 n. 5."
785 F. Supp. at 955-56.
The basis for our holding is illustrated by the words of a Florida justice:
 "I am absolutely unwilling to deny the foreseeability of injury to a child who is subjected to sexual abuse. It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended. That conduct inescapably inspires some response in the minor victim. Whether the response is a precocious excitation of libido, an utter revulsion or simply confusion, the child suffers grave psychological injury. Indeed, the fact that the ultimate goal of this litigation is to acquire funding to reconstruct [the child's] emotional status is a testament to the soundness of my urging that we not afford slavish adherence to a principle [subjective intent to harm] that simply does not fit the context. The damage [the child] suffered flowed just as surely from [the insured's] criminal acts as if he had taken his fist or club and struck her in the face."
Zordan v. Page, 500 So.2d 608, 613 (Fla.Dist.Ct.App. 1986), review denied, 508 So.2d 15 (Fla. 1987) (Frank, J., dissenting).
There is another reason why the judgment of the trial court is due to be affirmed. The discussion above is based on the policy exclusion precluding coverage for bodily injury "which is either expected or intended by an insured," but we also hold, based on the facts and circumstances presented here, that coverage would likewise be precluded under the objective standard of the second policy exclusion, which denies coverage for bodily injury or property damage "to any person or property which is the result of willful and malicious acts of an insured."
The Davises argue that such a holding of no coverage may militate against the compensation of the actual victims of such assaults. While the primary rationale for the minority view ofMcIntyre was compensating the victims of such abuse, we recognize that a vast majority of courts has correctly "determined that this benefit is outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm that the courts have established is inherent in such offenses." Whitt, 707 F. Supp. at 1016. Additional support for our holding derives from "the desire to place moral liability with the same precision with which we would place economic liability." Fore, 785 F. Supp. at 955. As theWhitt court further stated:
 "[The majority inferred-intent rule] stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. The courts following the majority approach have concluded that sexual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he is expected to know that. Hence, these courts infer the intent to harm as a matter of law in sexual misconduct cases involving minors."
707 F. Supp. at 1016.
Our holding also mandates that in cases of this kind the insurer has no duty to indemnify the insured and no duty to defend the insured. Although the law in Alabama holds that an insurer's duty to defend can be broader than its duty to pay, we find the two duties inseparable in this type of case. InWestern National Assurance Co. v. Hecker, 43 Wn. App. 816, 719 P.2d 954, 958 (1986), the court held that the duty to defend, rather than being a separate issue whose resolution depends upon a determination of the potential for coverage under the policy, depends instead upon the determination of the duty to pay, that is, whether there is in fact coverage under the policy. The court in Horace Mann Ins. Co. v.Leeber, 180 W. Va. 375, 376 S.E.2d 581, 584 (1988), noted that "[t]he majority of jurisdictions deciding these questions hold that there is neither a duty to defend nor [a *Page 466 
duty] to pay under such circumstances." The Leeber
court further stated, "[U]nder the majority view, a liability insurer would have no duty to defend a civil action against the insured based upon alleged sexual misconduct, because, as seen, there is, under such view, definitely, as a matter of law, no duty to pay." 180 W.Va. at 379,376 S.E.2d at 585.
We likewise reject any contentions by Delores Davis that she should be afforded coverage because she was not accused of any intentional act, but only a breach of a duty to report the egregious conduct of her husband. As this Court wrote inKinnon v. Universal Underwriters Ins. Co,418 So.2d 887, 888 (Ala. 1982):
 "The identity of the insured and liability of the insurer are determined from the terms of the contract, Armstrong v. Security Insurance Group, 292 Ala. 27, 30, 288 So.2d 134, 136
(1973), and this court must resolve any ambiguities contained in the policy in favor of the insured. Employers Ins. Co. eof Alabama v. Jeff Gin Company, 378 So.2d 693, 695 (Ala. 1979). But if a contract is plain and free from ambiguity, however, there is no room for construction, and it is the duty of the court to enforce it as written. [Citations omitted.] Likewise, the court cannot refine away the terms of the contract that are expressed with sufficient clarity to convey the intent and meaning of the parties. Green v. Merrill, 293 Ala. 628, 631, 308 So.2d 702, 704 (1975)."
In Allstate Ins. Co. v. Foster, 693 F. Supp. 886
(D.Nev. 1988), the plaintiffs in the underlying damages action alleged that the insured's wife was negligent since she knew of her husband's sexual assaults and molestations and failed to warn, disclose, or otherwise protect the child while she visited the insured's home. In interpreting a policy provision similar to the one in this case, i.e., one excluding coverage for "bodily injury . . . which may reasonably be expected to result from the intentional or criminal acts of an
insured person," the Foster court held that the policy excluded coverage to the wife for liability arising from harm directly attributable to the intentional or criminal act of her husband. 693 F. Supp. at 889. The court held that because the policy excluded coverage for "harm resulting from the intentional or criminal 'acts of an insured person,' the insurance policy excludes coverage to any other insureds," including the wife, "for liability arising from the harm which is directly attributable to the intentional or criminal act."Id.
In Allstate Ins. Co. v. Freeman, 432 Mich. 656,443 N.W.2d 734 (1989), the court, in interpreting a similar policy exclusion, stated:
 "Strong public policy supports this decision. Adherence to a correct usage of the English language in insurance contract construction promotes a uniform, reliable, and reasonable foundation upon which policyholders and insurers alike may rely when they enter into a contractual agreement. In the instant case, if we place the word 'a' or 'an' in front of the word 'insured,' then we must conclude that 'an insured' unambiguously means 'any insured.'
432 Mich. at 699, 443 N.W.2d at 754. See also Vanguard Ins.Co. v. McKinney, 184 Mich. App. 799, 459 N.W.2d 316 (1990); and Travelers Ins. Co. v. Blanchard, 431 So.2d 913
(La.App. 1983).
In this case, the relevant provisions exclude coverage for bodily injury or property damage "which is either expected or intended by an insured; or to any person or property which is the result of willful and malicious acts ofan insured." (Emphasis added.) We hold that this policy provision excludes coverage for Delores Davis for harm directly attributable to the intentional conduct of her husband, Jerry Davis.
QUESTIONS ANSWERED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] See Boyd v. Great Central Ins. Co., 401 So.2d 19
(Ala. 1981); Smith v. North River Ins. Co.,360 So.2d 313 (Ala. 1978); and Hartford Fire Ins. Co. v.Blakeney, 340 So.2d 754 (Ala. 1976).
[2] See, e.g., White v. Maryland Cas. Co.,589 So.2d 1294 (Ala. 1991) (insured filed declaratory judgment action against his homeowner's insurance carrier, seeking an order requiring that the company defend him and pay any judgment that might be rendered against him in a wrongful death action arising from an intentional shooting); United StatesFidelity Guar. Co. v. Armstrong, 479 So.2d 1164 (Ala. 1985) (liability insurer sought declaratory judgment determining question of insurance coverage for a sewage overflow caused by insureds engaged in construction of sewage system where sewage line was intentionally crushed);Allstate Ins. Co. v. Portis, 472 So.2d 997 (Ala. 1985) (homeowner's insurer filed declaratory judgment action to determine applicability of 'intentional acts' exception after wrongful death action was filed by family of neighbor fatally shot by the insured); Allstate Ins. Co. v. Shirah,466 So.2d 940 (Ala. 1985) (automobile insurer asserted that insured intentionally caused injuries to police officer who was in pursuit of insured); Watson v. Alabama Farm Bureau Mut.Cas. Ins. Co., 465 So.2d 394 (Ala. 1985) (insured filed a declaratory judgment action against the insurer, seeking to have insurer defend him in a pending assault and battery case arising from a shooting incident).
[3] While Dyer did not expressly adopt the above-quoted language from Toal, in White v.Maryland Cas. Co., 589 So.2d 1294 (Ala. 1991), another shooting case applying the subjective intent standard ofDyer, the Court added that "[o]n the issue of subjective intent, this Court has held that intent can be inferred from the surrounding circumstances."589 So.2d at 1297.
[4] The states cited by the Whitt court as having adopted the majority rule are Arkansas, California, Colorado, Florida, Georgia, Iowa, Maryland, Massachusetts, Michigan, Minnesota, New Hampshire, Oklahoma, Washington, and West Virginia. The cases, listed at note 4 of Whitt,707 F. Supp. at 1014-15, include the following: CNA Ins. Co. v.McGinnis, 282 Ark. 90, 666 S.W.2d 689 (1984); AmericanStates Ins. Co. v. Borbor, 826 F.2d 888 (9th Cir. 1987);State Farm Fire Cas. Co. v. Huie, 666 F. Supp. 1402
(N.D.Cal. 1987), aff'd sub nom. State Farm Fire Cas. Co.v. Bomke, 849 F.2d 1218 (9th Cir. 1988); Fire Ins.Exchange v. Abbott, 204 Cal.App.3d 1012, 251 Cal.Rptr. 620
(1988); Allstate Ins. Co. v. Kim W., 160 Cal.App.63d 326, 206 Cal.Rptr. 609 (1984); Troelstrup v. DistrictCourt, 712 P.2d 1010 (Colo. 1986); McCullough v.Central Florida YMCA, 523 So.2d 1208 (Fla.Dist.Ct.App. 1988); Landis v. Allstate Ins. Co., 546 So.2d 1051
(Fla. 1989); Roe v. State Farm Fire Cas. Co.,188 Ga. App. 368, 373 S.E.2d 23 (1988), aff'd, 259 Ga. 42,376 S.E.2d 876 (1989); Vermont Mutual Ins. Co. v. Malcolm,128 N.H. 521, 517 A.2d 800 (1986); Altena v. United Fire Cas. Co., 422 N.W.2d 485 (Iowa 1988); Harpy v.Nationwide Mut. Fire Ins. Co., 76 Md. App. 474,545 A.2d 718 (1988); Terrio v. McDonough, 16 Mass. App. 163,450 N.E.2d 190, review denied, 390 Mass. 1102, 453 N.E.2d 1231
(1983); Auto-Owners Ins. Co. v. Gardipey,173 Mich. App. 711, 434 N.W.2d 220 (1988); Linebaugh v.Berdish, 144 Mich. App. 750, 376 N.W.2d 400 (1985);Horace Mann Ins. Co. v. Independent School District No.656, 355 N.W.2d 413 (Minn. 1984); Estate of Lehmann v.Metzger, 355 N.W.2d 425 (Minn. 1984); Fireman's FundIns. Co. v. Hill, 314 N.W.2d 834 (Minn. 1982);Illinois Farmers Ins. Co. v. Judith G., 379 N.W.2d 638
(Minn.Ct.App. 1986), review denied (Minn. 1986); MutualService Casualty Ins. Co. v. Puhl, 354 N.W.2d 900
(Minn.App. 1984), review denied (Minn. Feb. 6, 1985);Allstate Ins. Co. v. Thomas, 684 F. Supp. 1056
(W.D.Okla. 1988); Rodriguez v. Williams, 107 Wn.2d 381, 729 P.2d 627 (1986); Public Employees Mut. Ins. Co. v.Rash, 48 Wn. App. 701, 740 P.2d 370 (1987); GrangeIns. Association v. Authier, 45 Wn. App. 383,725 P.2d 642 (1986), review denied, 107 Wn.2d 1024 (1987); St.Michelle v. Robinson, 52 Wn. App. 309, 759 P.2d 467
(1988); and Horace Mann Ins. Co. v. Leeber, 180 W. Va. 375, 376 S.E.2d 581 (1988).
Courts in Alaska, Arizona, Delaware, Kansas, Illinois, Indiana, Louisiana, Maine, Nebraska, Nevada, New Jersey, New York, Oregon, Pennsylvania, South Dakota, and Wisconsin have also adopted the majority rule inferring intent to injure in sexual assaults of minors. Additional cases from jurisdictions that have adopted the majority rule include; Allstate Ins.Co. v. Roelfs, 698 F. Supp. 815 (D.Alaska 1987); TwinCity Fire Ins. Co. v. Doe, 163 Ariz. 388, 788 P.2d 121
(Ariz.App. 1989); Allstate Ins. Co. v. Gilbert,852 F.2d 449 (9th Cir. 1988) (applying California law); J.C.Penney Cas. Ins. Co. v. M.K., 52 Cal.3d 1009,278 Cal.Rptr. 64, 804 P.2d 689, cert. denied, ___ U.S. ___,112 S.Ct. 280, 116 L.Ed.2d 232 (1991); Allstate Ins. Co. v.Troelstrup, 789 P.2d 415 (Colo. 1990); People v.Garciadealba, 736 P.2d 1240 (Colo.App. 1986); Motleyv. Maddox, No. C.A. 90C-JL-82, 1992 WL 52206 (Del.Super., Feb. 19, 1992); Troy v. Allstate Ins. Co., 789 F. Supp. 1134
(D.Kan. 1992); Allstate Ins. Co. v. Jarvis,195 Ga. App. 335, 393 S.E.2d 489(1990); Scudder v. Hanover Ins.Co., 201 Ill. App.3d 921, 147 Ill.Dec. 386, 559 N.E.2d 559
(1990); Wiseman v. Leming, 574 N.E.2d 327 (Ind.App. 1991); Doe v. Smith, 573 So.2d 238 (La.App. 1990), cert. denied, 573 So.2d 1139 (La. 1991); Perreault v. MaineBonding Cas. Co., 568 A.2d 1100 (Me. 1990);Worcester Ins. Co. v. Fells Acres Day School, Inc.,408 Mass. 393, 558 N.E.2d 958 (1990); New Hampshire Ins.Group v. Strecker, 244 Mont. 478, 798 P.2d 130 (1990);State Farm Fire Cas. Co. v. van Gorder,235 Neb. 355, 455 N.W.2d 543 (1990); State Farm Fire Cas. Co. v.Smith, 907 F.2d 900 (9th Cir. 1990) (applying Nevada law);Allstate Ins. Co. v. Foster, 693 F. Supp. 886 (D.Nev. 1988); Atlantic Employers v. Tots Toddlers,239 N.J. Super. 276, 571 A.2d 300 (A.D.), cert. denied, 122 N.J. 147, 584 A.2d 218 (1990); Allstate Ins. Co. v.Mugavero, 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365
(1992); Mutual of Enumclaw v. Merrill, 102 Or. App. 408, 794 P.2d 818, review denied, 310 Or. 475, 799 P.2d 646
(1990); Foremost Ins. Co. v. Weetman, 726 F. Supp. 618
(W.D.Pa. 1989); American Family Mut. Ins. Co. v.Purdy, 483 N.W.2d 197 (S.D. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 202, 121 L.Ed.2d 144 (1992); Dotts v.Taressa J.A., 182 W. Va. 586, 390 S.E.2d 568 (1990);N.N. v. Moraine Mut. Ins. Co., 153 Wis.2d 84,450 N.W.2d 445 (1990); and K.A.G. v. Stanford,148 Wis.2d 158, 434 N.W.2d 790 (1988), review denied, 439 N.W.2d 142 (Wis. 1989).
[5] See J.C. Penney Cas. Ins. Co. v. M.K., 52 Cal.3d 1009,278 Cal.Rptr. 64, 804 P.2d 689, cert. denied, ___ U.S. ___, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991); Allstate Ins.Co. v. Troelstrup, 789 P.2d 415 (Colo. 1990); Landisv. Allstate Ins. Co., 546 So.2d 1051 (Fla. 1989);Vermont Mut. Ins. Co. v. Malcolm, 128 N.H. 521,517 A.2d 800 (1986). *Page 467