**SENTRY INSURANCE COMPANY,**
**Plaintiff,**

v.

**Leonard MILLER, et al., Defendants.**

**Civ. A. No. CV–95–A–264–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 24, 1996.

William G. Gantt, Eugene D. Martenson, Birmingham, AL, for plaintiff.

William R. Blanchard, James F. Hampton, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

Before the court are cross motions for summary judgment in a declaratory judgment action filed by an insurance company seeking a determination of its rights and obligations under a homeowner's insurance policy. The parties agree that resolution of the cross motions for summary judgment will finally determine this case. For the reasons stated below, the court finds that summary judgment for each party is to be granted in part and denied in part. A separate order will enter judgment consistent with this opinion.

### PROCEDURAL HISTORY

On January 6, 1995, Sharon Colella, the mother and next friend of five-year-old Courtney Brownell, filed suit against Leonard Miller in the Circuit Court of Montgomery County, Alabama. On April 10, 1995, an amendment was allowed to the complaint changing the designation of the Plaintiffs.[1] (Brownell's lawsuit will be referred to as the "Liability Action.") The original and first amended complaints claimed assault and battery, harassment, invasion of privacy, intentional infliction of emotional distress, and outrage. The Liability Action's Second Amended Complaint (hereinafter "Complaint") subsequently added a claim for negligence.

Miller filed an insurance claim with Sentry Insurance Company ("Sentry") seeking personal liability coverage through his homeowner's insurance policy. On February 24, 1995, Sentry filed with this court its Complaint for Declaratory Relief, naming as defendants Colella (individually and as mother and next friend of Brownell) and Miller. Sentry seeks a declaration that Miller's homeowner's policy does not provide either insurance coverage or a defense for Miller for any of the claims in the Liability Action.

On June 21, 1995, Sentry filed its Motion for Final Summary Judgment. Colella and Miller filed their own motions for summary

---

1. The case of *COURTNEY BROWNELL, by and through her Mother and Next Friend, SHARON COLELLA, and SHARON COLELLA, Individually* *v. LEONARD MILLER,* CV–95–41–PH, in the Circuit Court of Montgomery County, Alabama, underlies this declaratory judgment action.

judgment on December 29, 1995, and January 2, 1996, respectively, seeking a declaration that Miller's insurance policy covers the claims in the Liability Action and entitles him to a defense.

## FACTS

In the claims for assault and battery, harassment, invasion of privacy, intentional infliction of emotional distress, and outrage, the Complaint alleges that at various times Miller wilfully exposed his penis to Brownell and caused her to touch and feel his penis for his own sexual gratification. Alternatively, in its negligence claim the Complaint alleges that "Defendant Miller recklessly, negligently and carelessly took action that resulted in [Brownell's] hand being placed upon Defendant Miller's penis.... This reckless, negligent and careless conduct of Defendant Miller resulted in the negligent touching and contact with [Brownell], ... and she will endure future and permanent mental pain, suffering and anguish as a result of, and proximately caused, by this negligent, careless and reckless conduct of Defendant Miller."

Sentry's homeowner's insurance policy, which insured Miller during the alleged encounters with Brownell, promises, "to pay damages ... for bodily injury or property damage for which the law holds **you** responsible because of a **personal accident** covered by this insurance.... We'll pay for the cost of investigating the **personal accident** and arranging for the settlement of any claim against **you**. We'll also defend **you,** hire and pay a lawyer, and pay all defense costs if **you** are sued by someone for damages because of a **personal accident**—even if the accusations aren't true." (bold emphasis in original.) The policy defines "personal accident" as "an unexpected and unintended event that causes bodily injury or property damage during the policy period and arises out of **your** activities...." (bold emphasis in original.) An exclusion in the policy states, "We don't cover anyone for **personal accidents** ... arising out of ... [s]exual molestation, corporal punishment or physical or mental abuse, whether or not intentional...." (bold emphasis in original.)

## STANDARD FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## DISCUSSION

Although the parties submit numerous affidavits, deposition excerpts and exhibits in support of their motions for summary judgment, the court finds that coverage turns solely upon application of the policy provisions to the Complaint's allegations. Applying Alabama's rules for interpreting an insurance policy, the court determines that the policy does not cover the assault and battery, harassment, invasion of privacy, intentional infliction of emotional distress, and outrage claims, and does not provide a defense for them because these claims do not allege "personal accident[s]" as defined by the policy. The negligence claim does, however, allege "personal accident[s]" and therefore is covered, both for defense and indemnity, unless explicitly excluded elsewhere in the policy. Finding the exclusion proffered by Sentry inapplicable to the negligence claim on its face, the court holds that the policy provides a defense for this claim and would provide indemnity unless the proof at trial of the Liability Action establishes the policy's exclusion.

## I. The Material Facts

Initially, the court must consider the various materials filed in support of and in opposition to the motions for summary judgment to determine the material facts. As explained above, the substantive law applicable to the case determines which facts are mate-

rial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. All parties urge the court to apply Alabama law.

■ The court first looks to the Complaint to determine what claims are made against the insured. In Alabama, an insurance company's duty to defend its insured in a lawsuit arises when the complaint against the insured alleges a state of facts within policy coverage. *United States Fidelity and Guaranty Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala.1985). If the complaint against the insured implicates coverage, the insurer must defend its insured regardless of the insured's ultimate liability. *Id.* If the complaint's allegations on their face do not implicate policy coverage, then other facts outside the complaint may be taken into consideration in determining whether the complaint alleges a covered injury. *Pacific Indemnity Co. v. Run–A–Ford Co., Inc.*, 276 Ala. 311, 161 So.2d 789 (1964).

While Alabama case law allows a court to go beyond the allegations in a complaint to find coverage, the cases reveal limited application of the rule. In *Pacific Indemnity Co.*, the court went beyond a complaint's general allegation of negligence to determine that the alleged negligence arose through the use of an automobile, an express condition of coverage. 161 So.2d at 793–94. Similarly, in *Alfa Mutual Ins. Co. v. Jones*, 555 So.2d 77 (Ala. 1989), the court pierced a complaint alleging negligent supervision to determine that injury occurred while operating a go-cart, triggering an exclusion of coverage for injuries arising out of the insured's ownership of a motor vehicle.

These cases simply hold that a court may go outside the complaint to determine coverage when the determination cannot be made from the face of the complaint. No case cited to this court holds that coverage may be determined on the basis of evidence conflicting with a complaint's allegations. Such an inquiry would require a court in a declaratory judgment action to decide substantive issues pending in a previously filed legal action. This court is unwilling to engage in such decision making. Since the materials extrinsic to the Complaint either contradict its allegations or provide only surplusage, the court finds no reason to go beyond the Complaint's allegations. Thus, the court determines Miller's personal liability coverage by applying the policy provisions to the Complaint's allegations.

## II. Alabama Rules for Interpretation of Insurance Policies

Alabama law provides three rules of interpretation relevant to determining Miller's personal liability coverage in this case.

■ First, insurance policy provisions should be given their ordinary, common meaning: "It is the duty of the courts to take the words of an insurance policy as they are found in it, and as persons with usual and ordinary understanding would construe them when used to express the purpose for which they were employed." *Taber v. Nationwide Mutual Ins. Co.*, 447 So.2d 698, 700 (Ala. 1984) (quoting *Green v. Merrill*, 293 Ala. 628, 308 So.2d 702, 704 (1975)). The courts should give policy language "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance. An insurance policy should be read as a layman would read it and not as it might be analyzed by an attorney or insurance expert." *Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So.2d 567, 571 (Ala.1991) (quoting Appleman, Insurance Law and Practice, Rev.Vol. 13, § 7384 (1976)).

■ Second, when construing seemingly ambiguous policy language, courts should avoid a construction rendering the language redundant in the context of the whole policy: "It being presumed that every condition was intended to accomplish some purpose, it is not to be considered that idle provisions were inserted. Each word is deemed to have some meaning, and none should be assumed to be superfluous." *Liggans R.V. Ctr.*, 575 So.2d at 571 (quoting Appleman, Insurance Law and Practice, Rev.Vol. 13, § 7383 (1976)).

■ Third and finally, insurance policy provisions whose ambiguity cannot be resolved should be interpreted in a manner favorable to the insured. *See Taber*, 447 So.2d at 700.

With these rules of interpretation in mind, the court proceeds to apply the personal liability provisions of Miller's insurance policy to the Complaint's allegations against him.

### III. Application of the Policy to the Complaint's Allegations

Miller's insurance policy provides personal liability coverage for damages for which the law holds him responsible because of a "personal accident", a defined term, unless the "personal accident" arises out of "sexual molestation, corporal punishment or physical or mental abuse, whether or not intentional...." Accordingly, Sentry's obligations to Miller under the policy depend on two factors: whether the Complaint alleges "personal accident[s]" as defined in the policy, and, if so, whether the alleged "personal accident[s]" arise out of "sexual molestation," an undefined term, within the meaning of the policy.[2] The court first considers whether the Complaint alleges a "personal accident."

### A. Whether the Complaint alleges a "[P]ersonal [A]ccident."

Miller's insurance policy defines "personal accident" as "an unexpected and unintended event that causes bodily injury or property damage...." Webster's dictionary defines "event" as "something that happens," Webster's Third New International Dictionary 788 (1986), a definition in accord with the word's ordinary, common meaning. Applying this definition to the Complaint, the court finds that the "event[s]" underlying each claim are Brownell's alleged exposure to and contacts with Miller's penis. To assess whether these "event[s]" constitute "personal accident[s]," the court must determine whether, under the allegations of the Complaint, they would be considered "unexpected and unintended."

■ The counts seeking recovery for assault and battery, harassment, invasion of privacy, intentional infliction of emotional distress, and outrage allege that Miller wil-

fully exposed himself and caused Brownell to touch his penis. According to Alabama law, " 'Wilfulness' is the conscious doing of some act ... under knowledge of existing conditions accompanied with a design or purpose to inflict injury." Alabama Pattern Jury Instructions–Civil 29.01 (1974). Thus, if Miller acted wilfully, Brownell's exposure to and contacts with Miller's penis must have been expected and intended. Under the terms of the policy, such expected and intended events cannot constitute a "personal accident" implicating policy coverage. Therefore, Sentry has no duty to defend these claims or to pay any judgment entered on them. Accordingly, Sentry's motion for summary judgment regarding coverage for these claims will be granted, and Colella and Miller's respective motions for summary judgment regarding coverage for these claims will be denied.

■ The remaining claim alleges that Miller's "reckless, negligent and careless conduct" resulted in "the negligent touching and contact with [Brownell]." As explained by the Supreme Court of Alabama, a sizable distinction exists between "negligent" contact and "wilful" contact:

> Willfulness ... imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term 'negligence,' which conveys the idea of inadvertence, as distinguished from premeditation or formed intention.

*Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So.2d 142, 146 (Ala.1987) (quoting Speiser, Krause, & Gans, 3 The American Law of Torts, § 10.1, p. 358 (1986)) (quotation marks omitted). Thus, "negligent" contact is essentially inadvertent contact, the equivalent of unexpected and unintended contact. The negligence claim therefore alleges "personal accident[s]" that are covered by the policy unless specifically excluded.[3]

2. Sentry argues that the exclusion precludes coverage because the Complaint seeks damages arising from sexual molestation. Sentry proffers no argument for excluding coverage on the basis of the "physical or mental abuse" language. The

court therefore limits its inquiry to the sexual molestation prong of the exclusion.

3. Although after considering the factual submissions of the parties the court entertains serious

B. *Whether the Policy Excludes the Negligence Claim from Coverage.*

■ Sentry argues that Miller's policy contains an exclusion denying coverage. The exclusion reads, "We don't cover anyone for **personal accidents** ... arising out of ... [s]exual molestation, corporal punishment or physical or mental abuse, whether or not intentional...." (Bold emphasis in original.) Sentry applies the modifier "whether or not intentional" to "sexual molestation," (Sentry's interpretation is hereinafter "Construction One"), arguing that even if the Complaint alleges unexpected and unintended contact, such contact amounts to unintentional sexual molestation that is excluded from coverage. The court declines to adopt this unnatural use of the term "sexual molestation," choosing instead an interpretation allowing "sexual molestation" to retain its common, ordinary meaning.

Ordinarily, the term "sexual molestation" denotes intentional, forbidden sexual contact, not inadvertent, innocent contact between two persons that, through happenstance, involves the sexual organ of either. For example, the average layman would not use the term "unintentional sexual molestation" to describe inadvertent contact occurring while parent and small child bathe together. Nor would the term be used to describe contact *occurring* when changing a child's diaper. Inadvertent contact simply cannot be considered "sexual molestation."

Instead of adopting Construction One, the court finds that the exclusion lends itself to another, more reasonable interpretation. The modifier "whether or not intentional" should be limited to modify only "physical or mental abuse," (hereinafter "Construction Two"). Construction Two allows all the terms in the exclusion to retain their ordinary, common meaning: "sexual molestation" encompasses purely intentional, forbidden sexual contact; and "physical or mental abuse, whether or not intentional," encompasses both intentional abuse and neglect. Thus, Construction Two satisfies the first recited rule of interpretation.

Moreover, Construction Two does not render the exclusion redundant. According to Construction Two, the exclusion simply reads, "We don't cover anyone for **personal accidents** ... arising out of ... [s]exual molestation...." Applying the definition of "personal accident," this provision excludes from coverage unexpected and unintended events causing bodily injury that arise out of sexual molestation. The clause retains meaning even if "sexual molestation" refers only to intentional, i.e., expected or intended, contact. For example, a person might unintentionally drop and injure a child while engaged in an act of sexual molestation. Such a "personal accident" arising out of sexual molestation would be excluded from coverage. Thus, the language may be given its ordinary, common meaning without stripping the exclusion's efficacy, satisfying the second recited rule of interpretation.

■ Finally, the court notes that, even if Construction Two provides no fairer reading of the exclusion than Construction One, in deciding between alternatives the court must be mindful of the third recited rule of interpretation: when faced with an ambiguous provision, choose the construction favoring the insured. *See Taber*, 447 So.2d at 700. The Complaint's negligence claim alleges inadvertent contact; according to Construction Two, such contact cannot be "sexual molestation." [4] Thus, Construction Two would not

---

doubts concerning the validity of the negligence claim, the court today only applies the policy to the claims alleged in the Complaint. The validity of the particular claims, even those asserting novel theories of liability, should be resolved in the Liability Action.

**4.** Thus, the parties' extensive argument regarding the applicability of *State Farm Fire & Casualty Co. v. Davis*, 612 So.2d 458 (Ala.1993), is misplaced. *Davis* dealt with interpretation of policy provisions different from those involved here. *Davis* simply held that an intentional *inju-*

*ry* exclusion precludes coverage for sexual molestation of children because of the "inferred intent rule." *Id.* at 464. This rule holds that, in cases involving sexual abuse of children, intent to injure is inferred as a matter of law, regardless of the subjective intent of the molester. *Id.* at 463. An intentional *act* was presumed; the question was whether the injury resulting from that act was intentional. The inferred intent rule does not apply where, as here, the claim alleges negligent contact instead of sexual molestation. In other words, in cases where the inferred intent

exclude the Complaint's negligence claim from coverage, while Construction One arguably would. The court should therefore favor Construction Two.

■ Because Construction Two retains the language's common, ordinary meaning, avoids redundancy, and provides coverage, the court adopts this construction of the exclusion. Under this construction of the policy, in the negligence count Miller is "sued by someone for damages because of a personal accident—even if the accusations aren't true." Therefore, Sentry has a duty to defend Miller under Count VI. The duty to indemnify presents a somewhat different question. It appears from the face of the Complaint that the negligence claim is asserted as an alternative theory to the claims alleging intentional acts. If that is the case, and if the trial of the Liability Action should result in a verdict against Miller on the negligence count alone, thereby finding that there was no sexual molestation, but only an unexpected and unintended event, then there is coverage and Sentry will have a duty to indemnify, within policy limits. It is conceivable, however, although perhaps remote, that the evidence at trial might result in a verdict against Miller based on some intentional acts constituting sexual molestation and some negligent acts. If that should happen, the application of the exclusion would depend on whether the evidence which proved the unexpected and unintended acts, the "personal accidents", also proved that those acts "arose out of" the intentional acts constituting sexual molestation. If so, the exclusion would apply and Sentry would have no duty to indemnify. That will depend upon the outcome of the Liability Action and an application of the exclusion to the facts found there, and is not appropriate for determination in this action. Accordingly, Colella and Miller's respective motions for summary judgment declaring that coverage exists for the Liability Action's negligence claim will be granted and Sentry's motion for summary judgment with respect to the negligence claim will be denied, to the extent discussed above.

rule applies, sexual molestation is either alleged

## CONCLUSION

For the foregoing reasons, the court will grant Sentry's motion for summary judgment declaring that no coverage for indemnity or duty to defend exists for the Liability Action's assault and battery, harassment, invasion of privacy, intentional infliction of emotional distress, and outrage claims, being Counts I–V of the Complaint. Colella and Miller's respective motions for summary judgment declaring that coverage exists for these claims will be denied. The court will grant Colella and Miller's respective motions for summary judgment declaring that a duty to defend exists for the Liability Action's negligence claim, Count VI, and that the policy provides indemnity for that claim within policy limits, unless that liability is established to have arisen out of sexual molestation. Sentry's motion for summary judgment with respect to the Liability Action's negligence claim will be denied. A judgment in accordance with this memorandum opinion will be entered separately.

### *FINAL JUDGMENT*

In accordance with the Memorandum Opinion entered this date, it is the ORDER, JUDGMENT and DECREE of this court:

(1) That plaintiff Sentry Insurance Company's motion for summary judgment is GRANTED to the extent that it seeks a declaration that the homeowner's insurance policy does not cover the assault and battery, harassment, invasion of privacy, intentional infliction of emotional distress, and outrage claims in the case of *COURTNEY BROWNELL, by and through her Mother and Next Friend, Sharon Colella, and SHARON COLELLA, Individually v. LEONARD MILLER,* CV–95–41–PH, pending in the Circuit Court of Montgomery County, Alabama; in all other respects plaintiff Sentry Insurance Company's motion for summary judgment is DENIED;

(2) That the motions for summary judgment filed by defendants Leonard Miller and Sharon Colella, individually and as mother and next friend of her minor child Courtney Brownell, are GRANTED to the extent they

or otherwise assumed.

seek a declaration that the homeowner's insurance policy provides a defense for Miller and indemnity to the extent declared hereafter, under the negligence claim in the case of *COURTNEY BROWNELL, by and through her Mother and Next Friend, Sharon Colella, and SHARON COLELLA, Individually v. LEONARD MILLER,* CV–95–41–PH, pending in the Circuit Court of Montgomery County, Alabama; in all other respects their motions for summary judgment are DENIED;

(3) That it is DECLARED that the policy of homeowner's insurance provided by Sentry Insurance Company to Leonard Miller, policy # 77–67669–52, effective January 9, 1994, through January 9, 1995, does not require Sentry Insurance Company to defend Miller against claims of assault and battery, harassment, invasion of privacy, intentional infliction of emotional distress, and outrage, or to indemnify him for liability arising out of those claims, in the case of *COURTNEY BROWNELL, by and through her Mother and Next Friend, Sharon Colella, and SHARON COLELLA, Individually v. LEONARD MILLER,* CV–95–41–PH, pending in the Circuit Court of Montgomery County, Alabama;

(4) That it is DECLARED that the policy of homeowner's insurance provided by Sentry Insurance Company to Leonard Miller, policy # 77–67669–52, effective January 9, 1994, through January 9, 1995, requires Sentry Insurance Company to defend Miller against the negligence claim in the case of *COURTNEY BROWNELL, by and through her Mother and Next Friend, Sharon Colella, and SHARON COLELLA, Individually v. LEONARD MILLER,* CV–95–41–PH, pending in the Circuit Court of Montgomery County, Alabama;

(5) That it is DECLARED that the policy of homeowner's insurance provided by Sentry Insurance Company to Leonard Miller, policy # 77–67669–52, effective January 9, 1994, through January 9, 1995, requires Sentry Insurance Company to indemnify Leonard Miller for any liability, within the policy's limits, arising out of the negligence claim in the case of *COURTNEY BROWNELL, by and through her Mother and Next Friend,*

*Sharon Colella, and SHARON COLELLA, Individually v. LEONARD MILLER,* CV–95–41–PH, pending in the Circuit Court of Montgomery County, Alabama, unless that liability is established to have arisen out of sexual molestation.

(6) The parties are to bear their own costs.